EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Carlos J. Rivera Ruiz, et al.<br><br>    Recurridos<br><br>            v.<br><br>Municipio Autónomo de Ponce, et al.<br><br>    Peticionarios | Certiorari<br><br>2016 TSPR 197<br><br> 196 DPR ____ |

Número del Caso: AC-2014-40


Fecha: 14 de septiembre de 2016


Tribunal de Apelaciones:

    Región Judicial de Ponce, Panel VIII


Abogadas de la parte Peticionaria:

    Lcda. Carmen E. Torres Rodríguez
    Lcda. Marieli Paradizo Pérez


Abogados de la parte Recurrida:

    Lcdo. Carlos J. Rivera Ruiz
    Lcda. Yadira Manfredy Ramos


Materia: Responsabilidad Civil Extracontractual – El término prescriptivo para solicitar resarcimiento en los casos de daños y perjuicios ocasionados por cualquier acto u omisión culposo o negligente de carácter continuado, comienza a transcurrir cuando se verifiquen los últimos actos u omisiones o cuando se produzca el resultado definitivo, lo que sea posterior


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Carlos J. Rivera Ruiz, et al.

     Recurridos

       v.

                        AC-2014-0040

Municipio Autónomo de Ponce, et al.

     Peticionarios

Opinión del Tribunal emitida por el Juez Asociado señor MARTÍNEZ TORRES.

En San Juan, Puerto Rico, a 14 de septiembre de 2016.

Nos corresponde determinar cuándo comienza a transcurrir el término prescriptivo para incoar una acción de responsabilidad civil extracontractual por *daños continuados*. Aprovechamos la ocasión para aclarar nuestros pronunciamientos previos sobre este asunto. Así, resolvemos de forma definitiva que ante daños y perjuicios causados por cualquier acto u omisión culposa o negligente de carácter continuado, el término prescriptivo para incoar una acción para solicitar resarcimiento comienza a transcurrir cuando se verifiquen los últimos actos u omisiones o se produzca el resultado definitivo.

I

El 4 de diciembre de 2009, un grupo de residentes de la Calle Clarisas en la Urbanización La Rambla de Ponce (recurridos), presentaron una petición de *mandamus* y demanda sobre daños y perjuicios contra el Municipio Autónomo de Ponce (Municipio). Expresaron que la Calle Clarisas se inundaba cuando llovía copiosamente debido a la falta de mantenimiento y a problemas con el sistema de alcantarillado. Alegaron que esta situación impedía la entrada y salida de la urbanización y provocaba daños a los vehículos y propiedad mueble de los residentes, así como daños a la salud y severas angustias emocionales. Por esa razón, solicitaron que el Municipio corrigiera este problema y les compensara por los daños y perjuicios sufridos.

Luego de varios trámites procesales, el Tribunal de Primera Instancia concluyó que el Municipio tenía el deber ministerial de proveerle mantenimiento a las alcantarillas y tuberías pluviales. Por lo tanto, proveyó ha lugar a la petición de *mandamus*. Posteriormente, el Municipio presentó una moción de sentencia sumaria, a la que acompañó unas deposiciones en las que los recurridos admitieron que conocían desde hacía varios años el carácter recurrente de las inundaciones. Debido a la previsibilidad de los daños, el Municipio señaló que los daños reclamados eran continuados y su período prescriptivo culminó un año después de que los recurridos

advinieron en conocimiento del carácter recurrente de las inundaciones. Los recurridos se opusieron y señalaron que esa no era la doctrina aplicable.

El Tribunal de Primera Instancia denegó la moción de sentencia sumaria. En lo pertinente, el foro primario concluyó "que los alegados daños sufridos por los demandantes debido a las inundaciones en la calle Clarisas son daños continuados, y que al día de hoy alegadamente continúan ocurriendo". Apéndice, pág. 321. En consecuencia, ese foro determinó que la acción en daños de la parte demandante no estaba prescrita, puesto que no se había dado el último suceso, ocurrido un resultado final, ni cesado la causa que generaba los daños. Íd. No obstante, el foro primario determinó que los siguientes hechos, entre otros, no estaban en controversia: (1) la Sra. Matos Socorro Hernández González reside en la Calle Clarisas hace treinta años. Sufre el problema de las inundaciones prácticamente desde que vive en ese lugar; (2) El Sr. Gilberto Rodríguez Zayas vivió en la Calle las Clarisas de la Urbanización La Rambla por espacio de veinticinco años. Este indicó que siempre que llueve la calle se inunda. El evento de inundación más remoto del que se acuerda ocurrió en el 1995; (3) La Sra. Milagros Rodríguez Rolón reside en la Calle Clarisas número 1256 hace veinticinco años. En su deposición, declaró que la calle donde residía se inundaba desde 1988. Apéndice, págs. 324-325.

Insatisfecho con el dictamen del Tribunal de Primera Instancia, el Municipio presentó un recurso de certiorari ante el Tribunal de Apelaciones. Allí señaló, en síntesis, que el foro primario erró al concluir que los daños reclamados en la demanda no estaban prescritos. Por su parte, el foro apelativo intermedio denegó la expedición del recurso, pues concluyó que el Tribunal de Primera Instancia no erró cuando denegó la desestimación por el fundamento de prescripción. Apéndice, págs. 13-25. Para llegar a esa conclusión, el Tribunal de Apelaciones concluyó, al igual que el Tribunal de Primera Instancia, que la presente reclamación es una por "daños que se regenera[n] ya que día a día la posibilidad de inundaciones sigue estando presente, por lo que, al ser un daño que persiste y no habiendo cesado la causa que los regenera, los mismos son de carácter continuado". Apéndice, pág. 24.

En desacuerdo con esa decisión, el Municipio presentó un recurso de certiorari ante nos. Sostuvo que el Tribunal de Apelaciones erró al confirmar el dictamen del Tribunal de Primera Instancia y no desestimar la demanda por estar prescrita. El 31 de octubre de 2014, acogimos la apelación como un recurso de certiorari y expedimos el auto. Con el beneficio de la comparecencia de ambas partes, pasamos a resolver.

II

A. La prescripción es una figura que extingue un derecho debido a que una parte no lo ejerce en un período de tiempo determinado por ley. Fraguada Bonilla v. Hosp. Aux. Mutuo, 186 DPR 365, 372-373 (2012). En nuestro ordenamiento, a diferencia de otros, la prescripción extintiva es una figura de derecho sustantiva y está regulada por las disposiciones del Código Civil. Íd. Este estatuto dispone en su Art. 1861, 31 LPRA sec. 5291, que: "Las acciones prescriben por el mero lapso del tiempo fijado por la ley". Sin embargo, el término para ejercer las acciones se puede interrumpir de tres maneras, a saber, por "su ejercicio ante los tribunales, por reclamación extrajudicial del acreedor y por cualquier acto de reconocimiento de la deuda por parte del deudor". Art. 1873 del Código Civil, 31 LPRA sec. 5303.

Estas normas tienen "su fundamento en la necesidad de poner término a las situaciones de incertidumbre en el ejercicio de los derechos y en la presunción de abandono por parte de su titular". Maldonado Rivera v. Suárez y otros, 2016 TSPR 57, págs. 8-9, 195 DPR ___ (2016) citando a J. Puig Brutau, Caducidad, prescripción extintiva y usucapión. 3ra ed. Ed. Bosh, Barcelona, 1996, pág. 32. Así, "la inactividad, silencio o falta de ejercicio del derecho constituye el fundamento de la prescripción extintiva por ser contrario al interés social una prolongada situación de incertidumbre jurídica". Íd. No

obstante, "la prescripción no es una figura rígida sino que […] admite ajustes judiciales, según sea requerido por las circunstancias particulares de los casos y la noción sobre lo que es justo". Santiago v. Ríos Alonso, 156 DPR 181, 189-190 (2002).

Como norma general, el término prescriptivo de un año dispuesto en el Art. 1868 del Código Civil, 31 LPRA sec. 5298, comienza a transcurrir desde que el agraviado tuvo -o debió tener- conocimiento del daño que sufrió y estuvo en posición de ejercer su causa de acción. Art. 1869 del Código Civil, 31 LPRA sec. 5299; véase, además, Maldonado Rivera v. Suárez y otros, supra, pág. 11. Por esa razón, cuando la causa de acción es por responsabilidad civil extracontractual, es importante precisar el tipo de daño por el que se reclama, para "poder establecer el punto de partida o momento inicial del cómputo y de esta forma conocer con certeza cuál será su momento final". Rivera Prudencio v. Mun. de San Juan, 170 DPR 149, 167 (2007).

Desde hace varias décadas, reconocimos en nuestro ordenamiento varios tipos de daños. Rivera Encarnación v. ELA, 113 DPR 383, 386 (1982). Entre estos se encuentran los llamados *daños continuados* y los *daños sucesivos*. Galib Frangie v. El Vocero de P.R., 138 DPR 560, 566 (1995). Por un lado, los *daños sucesivos* son

> una secuencia de reconocimientos de consecuencias lesivas por parte del perjudicado, las que se producen y manifiestan periódicamente, o aun continuamente, pero que se van conociendo en momentos distintos entre los que medió un lapso de tiempo finito, sin que en

momento alguno sean previsibles los daños subsiguientes, ni sea posible descubrirlos empleando diligencia razonable. Dicho en otras palabras, se trata de una secuencia de daños ciertos que se repiten (sin que sea necesario que sean idénticos en su naturaleza, grado, extensión y magnitud) cuya repetición no es previsible en sentido jurídico ni son susceptibles de ser descubiertos empleando diligencia razonable. […] Cada uno de los daños unitarios que en conjunto constituyen los daños sucesivos presentes en dichos ejemplos constituye una unidad jurídica de 'daño' que origina la correspondiente causa de acción resarcitoria. Santiago v. Ríos Alonso, supra, pág. 191.

Por otro lado, los *daños continuados* son

aqu[e]llos producidos por uno o más actos culposos o negligentes imputables al actor, coetáneos o no, que resultan en consecuencias lesivas ininterrumpidas, sostenidas, duraderas sin interrupción, unidas entre sí, las cuales al ser conocidas hacen que también se conozca — por ser previsible— el carácter continuado e ininterrumpido de sus efectos, convirtiéndose en ese momento en un daño cierto compuesto por elementos de daño actual (aquel que ya ha acaecido) y de daño futuro previsible y por tanto cierto. Rivera Prudencio v. Mun. San Juan, supra, pág. 167.

Como vemos, la diferencia entre ambos tipos de daños es que en los sucesivos, cada lesión a causa de un acto u omisión culposa o negligente produce un daño distinto, que a su vez, genera una causa de acción independiente, mientras en que en los continuados se genera una sola causa de acción que comprende todos los daños ciertos, tanto los actuales como los **previsibles** en el futuro, como consecuencia de una conducta torticera continua. Esa diferencia implica que en estos dos escenarios el término prescriptivo para presentar una reclamación de

indemnización comienza a transcurrir en momentos distintos.

Conviene aclarar que aunque tradicionalmente nos referimos a las doctrinas bajo estudio como "daños continuos" o "daños sucesivos", lo que en realidad es continuo o sucesivo en estos escenarios es el acto u omisión que produce el daño y no, necesariamente, la lesión sufrida. Respecto a los daños continuados, así lo advertimos hace más de sesenta años cuando expusimos que la esencia de esa doctrina "no descansa en la naturaleza […] del perjuicio ocasionado por la perturbación, y sí en el carácter continuo o progresivo de **la causa** [acto u omisión torticera] que lo origina, que renueva constantemente la acción dañosa". (Énfasis suplido) Arcelay v. Sánchez, 77 DPR 824, 838 (1955). Por eso, entendemos que una clasificación más precisa es "daños y perjuicios causados por actos [u omisiones] continuos". Capella v. Carreras, 57 DPR 258, 266 (1940). De esta forma, evitamos la confusión que genera la traducción del inglés al español del término *tort* como daño o daños. Adviértase que cuando esa palabra se utiliza en plural describe el área del Derecho que estudia la responsabilidad civil extracontractual, pero a la misma vez puede utilizarse en sustitución de los términos *perjuicios* o *lesiones*.

Nuestros pronunciamientos previos sobre este asunto, particularmente en lo referente a los llamados *daños*

*continuados*, han sido imprecisos, pues hemos aplicado normas contradictorias entre sí. Eso ha llevado a una confusión doctrinal. Véanse J.J. Álvarez González, Análisis del Término 2006-2007 – Responsabilidad civil extracontractual, 77 Rev. Jur. UPR 603, 617-619 (2008) y J.J. Álvarez González, Análisis del Término 2001-02 – Responsabilidad civil extracontractual, 72 Rev. Jur. UPR 615, 638-642 (2003). Por lo tanto, resulta necesario clarificar la regla que rige en nuestro ordenamiento en estos casos.

Hace más de setenta años, en Capella v. Carreras, supra, un caso sobre un estorbo,[1] establecimos que los "daños y perjuicios causados por actos continuos […] están latentes hasta que cesa la causa que los genera. Bien puede decirse que en tal caso la acción dañosa se renueva de día en día, de hora en hora, de minuto en minuto, de segundo en segundo." Consecuentemente, concluimos que la demanda no estaba prescrita debido a que al momento de reclamarse la indemnización, la perturbación continuaba vigente. Posteriormente, en Arcelay v. Sánchez, 77 DPR 824 (1955), donde los daños eran producto de ruidos y hedores que producía constantemente una planta pasteurizadora,

---

[1] En los casos de estorbos públicos, el Art. 277 del Código de Enjuiciamiento Civil, 32 LPRA sec. 2761, crea una causa de acción para que una persona pueda solicitar que estos cesen y que se le indemnice por los perjuicios que le crearon. A pesar de esto, en lo que respecta a la indemnización, nuestro análisis en este tipo de casos se ha centrado en el Art. 1803 del Código Civil de 1902, o su equivalente actual, el Art. 1802 del Código Civil de 1930, 31 LPRA sec. 5141.

reiteramos la norma precitada. De esa manera, enunciamos que esa regla "no descansa en la naturaleza intrínseca del perjuicio ocasionado por la perturbación, y sí en el carácter continuo o progresivo de la causa que lo origina, que renueva constantemente la acción dañosa". Íd., pág. 839. Además, indicamos que esa norma no solo aplicaba cuando se reclamara indemnización por los daños causados a la propiedad del demandante, sino que aplicaba también a los escenarios donde se reclama por los daños y perjuicios personales. También validamos que el demandante enmendara su demanda para reclamar indemnización por los perjuicios causados hasta el momento del juicio debido a que estos continuaron después de que se presentó la demanda. Íd., págs. 846-848. Justificamos nuestro proceder al expresar que de esa forma se evitaba la "multiplicidad de acciones, siempre que el mal que produzca los daños sea de carácter continuo, y que los perjuicios subsiguientes sean similares a los que dieron lugar a la reclamación original". Íd., pág. 847. De igual modo, en Seda et al. v. Miranda Hnos.& Co., 88 DPR 355 (1963), ratificamos esta misma norma y expresamos que se podía recobrar por los daños y perjuicios "por todo el tiempo de la duración del estorbo". Íd., pág. 361. Hasta ese momento nuestra doctrina sobre este asunto no causó mayores confusiones. El desfase que hoy atendemos comenzó décadas después, cuando este Tribunal se enfrentó a casos donde los daños no eran ocasionados propiamente por estorbos.

En Galib Frangie v. El Vocero de P.R., supra, pág. 575, un caso en el que aunque no se encontraban ante nuestra consideración *daños continuados*, sino *daños sucesivos* producidos por la publicación de una serie de artículos libelosos, establecimos que al momento de determinar cuándo inicia el término prescriptivo en estos escenarios "Lo determinante es el momento *cuando comienza* la producción de los daños, que deberá tomarse en consideración como el inicio del término de prescripción, al presuponer que los perjudicados los conocían desde entonces y que pudieran ejercitar la causa de acción". (Énfasis en original). A pesar de que esas expresiones constituyen *obiter dicta*, se repitieron en nuestra jurisprudencia y crearon la confusión doctrinal que hoy abordamos. Véanse J.J. Álvarez González, Análisis del Término 2001-02 - Responsabilidad civil extracontractual, supra, pág. 640, n. 83; Ruth E. Ortega-Vélez, Jurisprudencia Responsabilidad Civil Extracontractual, 2da Ed. Rev., Ediciones Scisco, 2009, pág. 138.

Poco tiempo después, en Sánchez et al. v. A.E.E., 142 DPR 880 (1997), una Sentencia breve, varios jueces emitieron Opiniones concurrentes y disidentes en donde abordaron, de forma directa o indirecta, este mismo asunto. El entonces Juez Asociado señor Hernández Denton expuso lo siguiente: "La jurisprudencia española moderna ha declarado con carácter general que en caso de daños continuados el cómputo del plazo de prescripción comienza

en el momento de la producción del resultado definitivo". (Citas omitidas). Íd., pág. 921 (Opinión disidente del Juez Asociado señor Hernández Denton). Igualmente, la entonces Jueza Asociada señora Naveira de Rodón abordó indirectamente este punto al expresar que "[e]l término prescriptivo en acciones por la creación de un ambiente hostil de trabajo debe comenzar a decursar desde que **cese** dicho ambiente. Esta norma reconoce que el término prescriptivo […] debe comenzar a decursar **cuando se disipan** las circunstancias que podrían entorpecer el ejercicio de la acción". (Énfasis suplido). Íd., pág. 913 (Opinión disidente de la Jueza Asociada señora Naveira de Rodón).

Luego, en Santiago v. Ríos Alonso, supra, pág. 195, determinamos que ante un patrón de maltrato físico y emocional, "el último incidente de maltrato, cuando la víctima rompe con el ciclo de maltrato y reconoce que ha sufrido un daño cierto, es el que activa la causa de acción y, en consecuencia, constituye el momento a partir del cual puede ejecutarse la misma". (Énfasis suprimido). No obstante, para justificar ese resultado, citamos el caso de Galib Frangie v. El Vocero de P.R., supra.

Subsiguientemente, en Nazario v. ELA, 159 DPR 799, 807 (2003), una Sentencia publicada, aplicamos nuevamente la norma de Galib Frangie v. El Vocero de P.R., supra, e indicamos que en los casos de *daños continuados* "lo determinante para establecer el inicio del término

prescriptivo […] es el momento en que *comienza* la producción del daño". (Énfasis original). Razonamos que esto se debía a que "al ser previsibles, se entiende que el término prescriptivo comienza a transcurrir cuando el perjudicado conoce, por primera vez, el daño y el responsable de éste y que dicho daño comprende todas sus consecuencias como posibles de prever." Nazario v. ELA, supra, pág. 807. Además de que esos pronunciamientos fueron en una Sentencia, la cual no establece precedente, también es importante mencionar que en ese caso la mayoría del Tribunal determinó finalmente que la controversia ante su consideración se trataba de *daños sucesivos* y *no continuados*, por lo que no aplicó la precitada norma. Sin embargo, el Juez Asociado señor Corrada Del Río emitió una Opinión disidente, pues entendió que los daños en cuestión eran continuados. Allí, luego de hacer un repaso de las distintas normas sobre prescripción en este tipo de casos, sugirió que en nuestro ordenamiento se aplicara la norma que computa el término prescriptivo a partir del momento en que finaliza la causa que genera los daños. Nazario v. ELA, supra, págs. 828-829 (Opinión disidente del Juez Asociado señor Corrada del Río) ("Entendemos que por estar los daños continuados inexorablemente atados a la causa que la origina, el conocimiento definitivo de los quebrantos ocasionados se verifica el día que cesa la fuente de éstos, ya que mientras ésta exista, y por ende

sean previsibles más daños relacionados a ella, no cabe hablar de resultado definitivo"). (Énfasis suprimido).

Posteriormente, en Rivera Prudencio v. Mun. San Juan, supra, pág. 167, dispusimos que "el plazo prescriptivo para reclamar por daños de naturaleza continua comienza a transcurrir cuando se verifica el **último de los actos o se produzca el resultado definitivo**". (Énfasis suplido). Sin embargo, al igual que en el caso anterior, finalmente concluimos que los daños en cuestión eran sucesivos, así que no aplicamos esta norma, por lo que esos pronunciamientos sobre el tema que hoy atendemos constituyen *obiter dicta*. Luego, en Umpierre Biascoechea v. Banco Popular, 170 DPR 205 (2007), (Sentencia), la Juez Asociada señora Rodríguez Rodríguez emitió una Opinión de conformidad en la que expuso que, conforme a la doctrina civilista moderna, "el inicio del plazo prescriptivo para reclamar por […] [daños continuados] comienza en *el momento de la producción del resultado definitivo o hasta que se verifique el último de los actos*". (Énfasis en el original). Íd., págs. 215-219. Igualmente, la entonces Jueza Asociada señora Fiol Matta emitió una Opinión disidente en la que coincidió, en cuanto a este punto, con lo expresado por la Juez Asociada señora Rodríguez Rodríguez. Íd., págs. 230-231

Como vemos, nuestra jurisprudencia es inconstante en cuanto a cuándo comienza a transcurrir el término prescriptivo en casos de daños y perjuicios causados por

actos u omisiones continuas. Una de las razones para estas contradicciones es la tensión aparente entre la teoría cognoscitiva del daño que rige en nuestro ordenamiento y la corriente doctrinal que postula que el término prescriptivo en estos casos comienza a transcurrir cuando se produce el resultado definitivo. Esto se debe a que, en la mayoría de los casos, el reclamante conoce que está sufriendo un daño desde que comienzan los actos u omisiones culposas o negligentes continuos y no desde que se produce el resultado final. H. Brau del Toro, <u>Los daños y perjuicios extracontractuales en Puerto Rico</u>, 2da ed., San Juan, Pubs. JTS, 1986, Vol. II, Cap. X, pág. 582. Esto nos llevó a forzar excepciones a la norma con tal de procurar resultados justos de acuerdo a los hechos de los casos. Así, vemos que en los casos donde se buscaba disuadir los estorbos y combatir la violencia doméstica, concluimos que el término prescriptivo comenzaba a transcurrir con el resultado definitivo o el último acto u omisión torticera, mientras que ante otros hechos, resolvimos lo contrario.

Otra de las razones por las cuales existen incongruencias en la doctrina es que nuestros casos se han basado en autoridades de otras jurisdicciones que con el paso del tiempo han cambiado su postura. Por ejemplo, los precedentes de mediados del siglo pasado estaban anclados, en gran medida, en fuentes del *common law* estadounidense, mientras que los casos más recientes citan con aprobación

a tratadistas civilistas, que a su vez, comentan la jurisprudencia española. Esta última también ha variado en tiempos recientes. Por ello, además de repasar nuestros pronunciamientos previos sobre este asunto, entendemos que es importante examinar el tratamiento que otras jurisdicciones le han brindado a la controversia ante nuestra consideración.

Sobre este particular, el tratadista Puig Brutau comenta que "[a]lgunas sentencias [españolas] han estimado que el año de plazo para recurrir ha de contarse, no en el momento de cesar el daño, sino desde que empieza a producirse, pues desde que se tuvo conocimiento del mismo se pudo ejercitar la acción. Sin embargo, en otros casos la jurisprudencia se ha inclinado claramente a favor de la otra posibilidad". J. Puig Brutau, Caducidad, prescripción extintiva y usucapión, 3ra ed., Barcelona, Ed. Bosh, 1996, pág. 77 citando a Díez-Picazo, La prescripción en el Código Civil, Barcelona, 1964 pág. 240. Véase, además, Reglero Campos en Albaladejo y Díaz Alabar, Comentarios al código Civil y Compilaciones Forales, Madrid, Ed. EDERSA, 1994, Tomo XXV, Vol. 2, págs. 454-464.

Por un lado, la vertiente más estricta de la doctrina tiene su origen en varias sentencias que el Tribunal Supremo español emitió a principios del siglo pasado que partían "del momento de comienzo de producción de los daños como iniciador de la prescripción, presuponiendo que los perjudicados los conocían desde entonces y que

pudieron sin obstáculo alguno ejercitar la pertinente acción". J. Santos Briz, La responsabilidad civil, 7ma ed., Madrid, Ed. Montecorvo, 1993, pág. 1187. Por otro lado, la segunda vertiente la encontramos en la doctrina española moderna que exhibe "una tendencia más elástica al situar el comienzo de la prescripción no en el inicio de los daños, sino **al realizarse su verificación total**". (Énfasis suplido) Íd., pág. 1188. En esta misma línea, "la jurisprudencia ha cambiado radicalmente el rumbo seguido por la que era dominante hasta la década de los sesenta […], señalando que en los casos de daños continuados, el *dies a quo* del plazo de la prescripción no ha de remitirse a la fecha de la ocurrencia del accidente, sino al momento en que el perjudicado conoce de modo cierto los quebrantos definitivamente ocasionados". Albaladejo y Díaz Alabar, op. cit., págs. 460-461. Véase, además, I. Sierra Gil de la Cuesta, Comentario del Código Civil, Ed. Bosch, 2000, T.9, pág. 554. Como resultado, el Tribunal Supremo de España ha expuesto en casos recientes que "es consolidada doctrina jurisprudencial la que refiere el comienzo del cómputo de la prescripción en este tipo de casos cuando se trata de daños continuados […] a aquel en que se produce el **resultado definitivo**." (Énfasis suplido) Díez-Picazo y Ponce de León, La prescripción extintiva en el Código Civil y en la jurisprudencia del Tribunal Supremo, Ed. Aranzadi, 2da ed., 2007, pág. 253. Es decir, "el cómputo del plazo de prescripción no se inicia **hasta la producción**

**del definitivo resultado**, cuando no es posible fraccionar en etapas diferentes o hechos diferenciados la serie proseguida." (Énfasis suplido) Íd., pág. 1003.

Los tratadistas españoles añaden que no siempre resulta fácil "determinar […] cuándo se produce o ha producido ese 'definitivo resultado' [puesto] que en relación con el concepto de daños continuados se nos ofrece como algo vivo, latente y conectado precisamente a la causa originadora y determinante de los mismos, que subsiste y se mantiene hasta su adecuada corrección". Albaladejo y Díaz Alabar, op. cit., pág. 460. Ahora bien, el entendido en la doctrina española moderna identifica ese momento cuando "el perjudicado conoce de modo cierto los **quebrantos definitivamente ocasionados**". (Énfasis suplido) Díez-Picazo y Ponce de León, op cit., pág. 1003. Esto es, cuando la conducta culposa o negligente ha dejado de causar los daños por los que se reclama indemnización.

Por otra parte, la mayoría de los estados de la Unión siguen una norma similar a la del derecho civilista español respecto a este asunto. "The continuing tort doctrine constitutes an established exception to the usual rule that a statute of limitations starts to run at the time of injury. In those cases […] the statute does not begin to run […] until the negligent or other wrongful act or incident has terminated." Speiser, et als., The American Law of Torts, West Group, 2013, Vol. 1A, sec. 5:27, págs. 347-353. Esta doctrina, en ocasiones conocida

como "continuing tort doctrine" y en otras como "continuing violation doctrine", se ha aplicado a casos de responsabilidad civil extracontractual por maltrato emocional, estorbos, impericia profesional, controversias sobre seguros, discrimen, intrusiones y explosiones, entre otros. Íd. Véase, además, Elad Peled, Rethinking the Continuing Violation Doctrine: The Application of Statutes of Limitations to Continuing Tort Claims, 41 Ohio N.U.L. Rev. 343 (2015).

B. Luego de examinar nuestra jurisprudencia, los precedentes modernos en otras jurisdicciones que nos resultan altamente persuasivos, así como los comentarios recientes de distintos tratadistas, entendemos que lo más adecuado es uniformar nuestra doctrina en aras de darle certeza a nuestro ordenamiento. De esta forma, **resolvemos que ante daños y perjuicios causados por cualquier acto u omisión culposo o negligente de carácter continuado, el término prescriptivo para incoar una acción para solicitar resarcimiento comienza a transcurrir cuando se verifiquen los últimos actos u omisiones o se produzca el resultado definitivo, lo que sea posterior.** Esta norma no es incompatible con la teoría cognoscitiva del daño que rige en nuestro ordenamiento. "Por estar los daños continuados inexorablemente atados a la causa que los origina, el conocimiento definitivo de los quebrantos ocasionados se verifica el día que cesa la fuente de éstos, ya que mientras exista, y por ende sean previsibles más daños

relacionados a ella, no cabe hablar de resultado definitivo". Nazario v. ELA, supra, pág. 828 (Opinión disidente del Juez Asociado señor Corrada del Río).[2] Naturalmente, esto no excluye que un demandante pueda probar, además, que conoció el daño sufrido en un momento distinto al que cesó la causa que lo generó.

No encontramos razón para no modernizar nuestra doctrina al igual que ha sucedido en otras jurisdicciones. Tampoco hallamos una justificación válida para tratar de forma distinta los casos en donde los daños no son producidos *estrictamente* por estorbos o actos de violencia doméstica. Independientemente de la naturaleza o el tipo de acto u omisión que genere el daño, en el contexto de *daños continuados*, el perjudicado se encuentra sufriendo un perjuicio que no ha de cesar, y por el contrario, se ha de repetir hasta que la causa generadora deje de existir.

---

[2] Conviene recalcar que en ocasiones, como en este caso, las opiniones disidentes del pasado encuentran eco en el presente y se convierten en precedentes de cara al futuro. "A dissent in a court of last resort is an appeal to […] the intelligence of a future day, when a later decision may possibly correct the error into which the dissenting judge believes the court to have been betrayed." Charles Evans Hughes, The Supreme Court of the United States 68 (1936). El hecho de que una postura no consiga la mayoría de los votos en un momento dado no significa, necesariamente, que es errónea. Simplemente no persuadió a la mayoría de los jueces que componían el Tribunal Supremo en un momento dado. Después de todo, este Tribunal no es *supremo* porque es infalible; solo es supremo en jerarquía. Por esta razón, al reexaminar nuestra jurisprudencia, en esta ocasión nos persuaden los planteamientos previos de varios jueces y juezas de este Tribunal, quienes desde sus respectivas Opiniones de conformidad, concurrentes o disidentes, abordaron la cuestión que hoy resolvemos de manera definitiva.

Por lo tanto, la norma que anunciamos hoy es aplicable a *todos* los casos sobre daños y perjuicios producidos por actos u omisiones continuados.

Tampoco nos persuaden las propuestas alternas que al momento de determinar cuándo comienza a transcurrir un plazo prescriptivo, por ejemplo, obligan a los tribunales a analizar si a pesar de reclamarse por daños continuados los perjuicios por los que se reclama indemnización tienen suficiente sustantividad y autonomía propia, o si por el contrario, el daño por el que se reclama es de carácter unitario y sin sustantividad propia. Laracruz Berdejo y otros, Elementos de Derecho Civil II, 5ta Ed., Madrid, Ed. Dykinson, 2013, T. II, Vol. 2, pág. 492. Igualmente, no nos convence la propuesta del profesor Brau del Toro respecto a que debe existir una distinción en el tratamiento brindado a los estorbos permanentes y a los estorbos continuos para fines de prescripción. H. Brau del Toro, op. cit., págs. 582-583. Estas alternativas, aunque pueden tener su mérito, desnaturalizan la esencia de los daños continuados, crean una nueva submodalidad de estos y a su vez, la equiparan a los daños sucesivos para fines de prescripción. La doctrina que hoy incorporamos definitivamente a nuestro ordenamiento nos parece más apropiada.

Lo contrario implica fraccionar innecesariamente las causas de acción, pues obligaríamos a los perjudicados a presentar sus demandas desde que se inician los daños,

incluso cuando la fuente que los genera no ha cesado y, por el contrario, continúa y continuará causando perjuicios adicionales. Esto provoca litigios excesivamente extensos, pues los demandantes tienen que enmendar constantemente sus demandas para incluir alegaciones y reclamos por daños sufridos, aunque por la misma causa, con posterioridad a la presentación de la demanda original. "En este contexto, el balance de los intereses involucrados en los términos prescriptivos se inclina en favor de los demandantes, pues la desestimación de su causa de acción los expondría a un [acto u omisión culposo o negligente], que, en teoría, podría continuar indefinidamente". (traducción nuestra) Peled, op cit., pág. 348, citando a Tyler T. Ochoa & Andrew J. Wistrich, The Puzzling Purposes of Statutes of Limitations, 28 PAC. L.J., 453, 505 (1997).

A diferencia de lo que podría intimarse, esta norma no fomenta que los demandantes se crucen de brazos, más bien, desincentiva que las personas actúen de forma culposa o negligente continuamente. De esta forma, no penalizamos a un demandante que presenta su reclamación cuando todavía no ha transcurrido un año desde que cesó la causa que generaba los daños por los que solicita indemnización. Recuérdese que el foco de análisis en la doctrina ante nuestra consideración es la omisión o el acto continuo y no propiamente los daños sufridos. Arcelay v. Sánchez, supra, pág. 838. Si en nuestro ordenamiento se reconoce la

interrupción y el comienzo de un nuevo término prescriptivo mediante actos extrajudiciales, también debemos reconocer que el término prescriptivo no comienza cuando la causa generadora del daño no ha cesado. En ese sentido, en ambos escenarios se preserva el derecho de los perjudicados a reclamar indemnización por los daños que sufrieron.

Por otra parte, constantemente enfatizamos el valor del precedente en nuestro ordenamiento. No obstante, nuestras decisiones no son un dogma escrito en piedra. Por eso, "cuando el razonamiento de una decisión ya no resiste un análisis cuidadoso, no estamos obligados a seguirla". Fraguada Bonilla v. Hosp. Aux. Mutuo, supra, pág. 391. "[E]l propósito inspirador de la doctrina de *stare decisis* es lograr estabilidad y certidumbre en la ley, mas nunca perpetuar errores". Am. Railroad Co. of P.R. v. Comisión Industrial, 61 DPR 314, 326 (1943). Ahora bien, solo procederá dejar a un lado precedentes: "(1) si la decisión anterior era claramente errónea; (2) si sus efectos sobre el resto del ordenamiento son adversos, y (3) si la cantidad de personas que confiaron en ésta es limitada". Pueblo v. Delgado, 175 DPR 1, nota 8 (2008); González v. Merck, 166 DPR 659, 688 (2006).

A la luz de todo lo anterior y debido a la confusión que ha causado en nuestra doctrina, dejamos sin efecto nuestros pronunciamientos previos en contrario a esta Opinión, en particular, los expuestos en Galib Frangie v.

El Vocero de P.R., supra, y su progenie, **en cuanto a este asunto particular**. Con ello, sacamos esa espina de nuestra jurisprudencia y eliminamos las dolencias que esta le causa a nuestra doctrina de daños y perjuicios.

III

En este caso, tanto el Municipio como los recurridos están de acuerdo con las determinaciones de los foros recurridos de que la causa que genera los daños por los que se reclama es de carácter continua. Los daños son el resultado de las inundaciones producidas como consecuencia de los defectos de las alcantarillas de la calle donde viven los recurridos. La única discrepancia es cómo debe computarse el término prescriptivo, pues los recurridos admitieron en varias deposiciones que conocían de la recurrencia de las inundaciones desde hacía muchos años.

Al analizar esos hechos a la luz de la norma discutida, concluimos que la demanda de epígrafe **no está prescrita**, puesto que no se han verificado los últimos actos u omisiones ni se ha producido el resultado definitivo. Más bien, nos encontramos ante una causa de acción que se regenera día a día mientras subsista la falta de mantenimiento de las alcantarillas y tuberías. Eso causa inundaciones recurrentes y previsibles.

IV

Por los fundamentos antes expuestos, confirmamos la determinación del Tribunal de Apelaciones. En consecuencia, se devuelve el caso al Tribunal de Primera

Instancia, Sala Superior de Ponce, para que continúen los procedimientos.


                              Rafael L. Martínez Torres
                                  Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Carlos J. Rivera Ruiz, et al.

     Recurridos

        v.

                          AC-2014-0040

Municipio Autónomo de Ponce, et al.

     Peticionarios

SENTENCIA

En San Juan, Puerto Rico, a 14 de septiembre de 2016.

Por los fundamentos antes expuestos, en la Opinión que antecede, la cual se hace formar parte integrante de la presente Sentencia, confirmamos la determinación del Tribunal de Apelaciones. En consecuencia, se devuelve el caso al Tribunal de Primera Instancia, Sala Superior de Ponce, para que continúen los procedimientos.

Lo acordó el Tribunal y lo certifica el Secretario del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez está conforme con la determinación de este Tribunal y hace constar la siguiente expresión: "Me place consignar mi conformidad con la opinión que hoy emite una mayoría de este Foro. Como bien subraya la opinión mayoritaria, 'este Tribunal no es *supremo* porque es infalible, solo es supremo en jerarquía'. *Carlos J. Rivera Ruiz, et al. v. Municipio Autónomo de Ponce, et al.*, 2016 T.S.P.R. ___, en la nota 2, 19_ D.P.R. ___ (2016).

El trayecto de la doctrina de los daños continuados en nuestra jurisprudencia ha sido uno

extenso. A pesar de ello, durante los últimos veinte años, el consenso respecto a la controversia puntual que hoy atendemos se podría describir como elusivo. Esto, a pesar de que, hace nueve años, intenté persuadir a una mayoría de este Tribunal de adoptar la normativa que hoy pautamos. Véase *Umpierre Biascoechea v. Banco Popular*, 170 D.P.R. 205 (2007) (Rodríguez Rodríguez, Opinión de conformidad). Empero, fue preciso esperar.

La doctrina del precedente judicial guía el proceder de este Tribunal en aras de salvaguardar la uniformidad en la interpretación del Derecho y la ley. Ahora bien, no podemos descansar en este principio cuando la aplicación del mismo tiene el efecto de perpetuar una lectura errónea del Derecho. Véase *Pueblo v. Díaz de León*, 176 D.P.R. 913, 922 (2009); *Pueblo v. Pérez Pou*, 175 D.P.R. 218, 251-252 (2009) (Rodríguez Rodríguez, Opinión disidente).

En fin, estoy satisfecha con que, de forma definitiva, hayamos logrado armonizar la doctrina de los daños continuados con la figura de la prescripción extintiva. Así, proveemos a la teoría general del Derecho de Responsabilidad Civil Extracontractual una mayor estabilidad".


Juan Ernesto Dávila Rivera
Secretario del Tribunal Supremo