ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| M.R. CONSTRUCTION, INC.<br><br>Parte Recurrida<br><br><br>v.<br><br><br>**INMOBILIARIA MEDIO MUNDO, LLC.**, **ALL HANDS DEVELOPMENT, LLC.**, **WILLIAM LUIS RAMIREZ GARRATÓN**, SU ESPOSA MARÍA EUGENIA ORTIZ Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS, RAFAEL ENRIQUE RODRÍGUEZ TORRES, SU ESPOSA JENNIE AMILIVIA REYES Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS, CORPORACIONES ABC, ASEGURADORES XYZ, FULANO DE TAL, SUTANA DE TAL<br><br>Parte Peticionaria | KLCE202401027 | *Certiorari,* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2019CV13173<br><br>Sala: 906<br><br>Sobre:<br><br>Ley de Corporaciones, Cobro de Dinero-ordinario, Fraude de Acreedores, Daños, Impugnación de Contrato, Nulidad de Contrato, Acción Rescisoria |

Panel integrado por su presidente, el Juez Figueroa Cabán, el Juez Salgado Schwarz y el Juez Monge Gómez.

Monge Gómez, Juez Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 15 de octubre de 2024.

Compareció ante este Tribunal la parte peticionaria, William Luis Ramírez Garratón (en adelante, el "señor Ramírez Garratón"), Inmobiliaria Medio Mundo LLC (en adelante, "Medio Mundo"), y All Hands Development, LLC (en adelante, "All Hands"), (en adelante y en conjunto los "Peticionarios"), mediante petición de *certiorari* presentada el 23 de septiembre de 2024. Nos solicitó la revocación de la *Resolución* emitida por

Número Identificador

RES2024_____

el Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante, el "TPI"), el 19 de julio de 2024, notificada y archivada en autos en la misma fecha. Dicho dictamen fue objeto de una "**Moción de Reconsideración**" interpuesta por los Peticionarios, la cual fue declarada "No Ha Lugar" mediante *Orden* del 22 de agosto de 2024.

Por los fundamentos que expondremos a continuación, *denegamos* la expedición del auto de *certiorari*.

**I.**

El caso de autos tuvo su génesis el 26 de diciembre de 2019, con la presentación de una "**Demanda**" por parte de MR Construction Inc. (en adelante, "MR" o el "Recurrido") en contra de los Peticionarios. En la misma, expresó que el 16 de abril de 2004 presentó una demanda ante el TPI, bajo el caso núm. K DC2004-0372, en contra de The Village Development Corporation (en adelante, "The Village") por cobro de dinero y remuneración por trabajos realizados en The Village at the Hill. Manifestó que, debido a la naturaleza técnica de la evidencia, el TPI designó al abogado e ingeniero, el Lcdo. José R. Capo López (en adelante, el "Lcdo. Capo López") para recibir la prueba, dirigir los asuntos, presidir el juicio y presentar el informe correspondiente. Alegó que The Village y Medio Mundo son empresas dedicadas al desarrollo de bienes raíces y que ambas son operadas y administradas por el Sr. Rafael E. Rodríguez Torres (en adelante, el "señor Rodríguez Torres") y el señor Ramírez Garratón.

Asimismo, señaló que el 20 de diciembre de 2013 Medio Mundo y All Hands otorgaron cierta escritura intitulada "Escritura sobre Segregación, Liberación, Agrupación y Cesión" a través de la cual The Village compareció como propietario titular y cedente de las parcelas A, B y C, y All Hands como el tenedor de los pagarés hipotecarios que gravaban dichas parcelas. Arguyó que los Peticionarios segregaron grandes porciones de las Parcelas A, B y C, por lo que nacieron las fincas A-1, B-1, C-1, solar 95 y solar 106.

Alegó que el 20 de diciembre de 2013, The Village, Medio Mundo, All Hands, el señor Rodríguez Torres y el señor Ramírez Garratón suscribieron cierto contrato intitulado "Acuerdo y Plan de Reorganización exenta de The

Village Development, Corp. e Inmobiliaria Medio Mundo LLC", a través del cual The Village le transfirió el 100% de la participación de Medio Mundo a sus oficiales y únicos accionistas, los señores Rodríguez Torres y Ramírez Garratón. Relató que, en esa misma fecha, All Hands y el señor Ramírez Garratón alegadamente firmaron un acuerdo donde All Hands le transfirió los pagarés hipotecarios de The Village al señor Ramírez Garratón, como pago por los $500,000.00 que supuestamente este último le prestó a All Hands.

Enunció que el 26 de septiembre de 2014 el TPI emitió una *Sentencia* en la que acogió el informe presentado por el Lcdo. Capo López y ordenó a The Village a pagarle: (1) la cantidad de $660,416.54 por el dinero adeudado, (2) $5,000.00 por concepto de honorarios de abogado y (3) $89,162.43 por costas y gastos legales, más el interés legal aplicable. Expresó que The Village apeló la antedicha *Sentencia* ante este Tribunal, la cual fue confirmada por un panel hermano el 21 de septiembre de 2015 y posteriormente presentó un recurso de *certiorari* ante el Tribunal Supremo, el cual fue denegado el 4 de marzo de 2016. Añadió que dicha *Sentencia* es final, firme e inapelable.

En armonía con lo anterior, le solicitó al TPI que le ordene a los Peticionarios el pago solidario de la cantidad de $796,002.00, más el interés legal de 4.25% o en su defecto, ordene la rescisión o nulidad de todos los negocios y/o transacciones llevadas a cabo el 20 de diciembre de 2013. De igual manera, peticionó que en caso de que las opciones anteriores no sean posibles, se le ordene a los Peticionarios el pago de la suma de $1,500,000.00 por concepto de daños y perjuicios. También solicitó el pago de las costas y gastos del litigio, así como una partida razonable por honorarios de abogados.

Luego de varios trámites procesales impertinentes a la controversia ante nos, el señor Ramírez Garratón presentó una "**Moción de Desestimación**", mediante la cual argumentó que procedía la desestimación del caso al amparo de la Regla 10.2 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2, puesto que el foro primario carecía de

jurisdicción sobre la materia. En detalle, afirmó que el 20 de abril de 2017 el Recurrido presentó una reclamación ante el Tribunal de Quiebras Federal contra The Village por presuntas transacciones fraudulentas efectuadas el 20 de diciembre de 2013 y que dicha reclamación fue desestimada el 18 de septiembre de 2017 debido a que MR no cumplió con las órdenes del Tribunal.

Adujo que el Recurrido presentó las mismas alegaciones que realizó en la reclamación ante la Corte de Quiebras, las cuales ya habían sido desestimadas. Así pues, alegó que en el presente caso era aplicable la doctrina de cosa juzgada, ya que la determinación final del foro federal fue dictada dentro de un pleito fundamentado en una cuestión federal. Igualmente, manifestó que según la Regla 41 (b) de Procedimiento Civil Federal, 28 USC App. R. 41 (b), una desestimación por no cumplir las órdenes del tribunal constituía una adjudicación en los méritos. Por último, expresó que, en caso de que el foro *a quo* considerara que la doctrina de cosa juzgada no era aplicable, la causa de acción sobre fraude de acreedores estaba prescrita, ya que el Artículo 1251 del Código Civil de Puerto Rico, 31 LPRA sec. 9812, dispone un término de cuatro (4) años para entablar la reclamación y MR interpuso la "**Demanda**" seis (6) años después de que ocurrieron las alegadas actuaciones fraudulentas.

Así las cosas, el 3 de agosto de 2020, el Recurrido presentó una "**Moción en Oposición a Moción de Desestimación**" en la que reiteró las alegaciones expuestas en la "**Demanda**" y señaló que no correspondía la desestimación del presente caso, dado que la doctrina de cosa juzgada no es de aplicación. Específicamente, indicó que no existía una decisión final en los méritos de la Corte de Quiebras que impedía presentar una reclamación en el foro primario estatal. Sostuvo que, conforme al caso Semtek Intern. Inc. v. Lockheed Martin Corp., 531 US 497 (2001), la Regla 41 (b) de las Reglas de Procedimiento Civil Federal, *supra*, no obstaculiza la presentación de una reclamación en un foro diferente, ya que no constituye una condición suficiente para producir un efecto preclusivo en otros tribunales. De igual forma, expresó que la causa de acción sobre

fraude de acreedores se instó dentro del término que establece nuestro ordenamiento. Así pues, le solicitó al TPI que declarara "No Ha Lugar la "**Moción de Desestimación**".

Posteriormente, el 27 de octubre de 2020, el señor Ramírez Garratón presentó "**Réplica a Moción en Oposición a Moción de Desestimación**" a través de la cual reafirmó los argumentos esbozados en la "**Moción de Desestimación**" y alegó que el caso Semtek Intern. Inc. v. Lockheed Martin Corp., *supra*, no es aplicable a la controversia ya que la mencionada norma aplica exclusivamente a los casos en que la Corte de Quiebras adquiera jurisdicción sobre la controversia por diversidad de ciudadanía y en el presente caso, dicho foro obtuvo jurisdicción a base de una cuestión federal.

Más adelante, el 7 de septiembre de 2021, MR presentó un "**Memorando en Oposición a Moción de Desestimación**" mediante el cual argumentó que, en el caso ante la Corte de Quiebras, los Peticionarios presentaron una *Moción de Desestimación* bajo el fundamento de que el Tribunal carecía de jurisdicción sobre la materia, por lo que alegar ante el TPI que el foro federal había adquirido jurisdicción es ir en contra de sus propios actos. Asimismo, aseveró que la mayoría de las causas de acción instadas en el caso son subsidiarias a la acción de ejecución de sentencia y requieren que se agoten los remedios contra The Village o que se pruebe su insolvencia.

De la misma manera, reiteró que la frase "judgement on the merits" no conlleva necesariamente la preclusión de una reclamación o *res judicata*. Además, expresó que no se satisfacen los requisitos de identidad de partes y de causas de acción establecidos por la doctrina de cosa juzgada. Por último, aclaró que no fue hasta el 15 de marzo de 2016 que advino en conocimiento del estado de insolvencia de The Village, por lo que la causa de acción de fraude de acreedores no había caducado al momento de presentar la "**Demanda**".

El 7 de septiembre de 2021, el Recurrido también presentó un "**Memorando de Derecho**" a través del cual reiteró su postura respecto a que la *Sentencia* emitida por la Corte de Quiebras constituye una

adjudicación en los méritos, por lo que MR estaba impedido bajo la doctrina de cosa juzgada de presentar una reclamación en los foros estatales. Finalmente, el 19 de julio de 2024, el TPI emitió una *Resolución* en la que declaró "No Ha Lugar" la "**Moción de Desestimación**" sin formular determinaciones de hechos ni conclusiones de derecho adicionales a tenor con la Regla 42.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 42.2. Asimismo, hizo formar parte integral de dicha *Resolución* los hechos y argumentos que fueron presentados por MR en su *Oposición*. Insatisfecho con esta determinación, los Peticionarios presentaron una "**Moción de Reconsideración**" que fue declarada "No Ha Lugar" el 22 de agosto de 2024.

Aún inconforme con lo anteriormente resuelto, el Peticionario acudió ante este Tribunal mediante el recurso de epígrafe, en el que señaló los siguientes errores:

> PRIMER ERROR: ERRÓ el TPI al emitir la Orden declarando no ha lugar la Moción de Reconsideración presentada y acogida por los peticionarios mediante la cual sostuvo, a su vez, la Resolución que denegó erróneamente y contrario a derecho, la Moción de Desestimación presentada por Ramírez Garratón al amparo de la Regla 10.2 de Procedimiento Civil y la doctrina de cosa juzgada.

> SEGUNDO ERROR: ERRÓ el TPI al emitir la Orden declarando no ha lugar la Moción de Reconsideración presentada y acogida por los peticionarios mediante la cual sostuvo, a su vez, la Resolución que denegó erróneamente y contrario a derecho, la Moción de Desestimación presentada por Ramírez Garratón al no aplicar el término de caducidad de la acción rescisoria por fraude de acreedores.

El 3 de octubre de 2024, el Recurrido presentó "**Alegato en Solicitud de Desestimación y en Oposición a Expedición de *Certiorari***".

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

**A.**

El auto de *certiorari* es el recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar, a su discreción, una decisión de un tribunal inferior. Mun. de Caguas v. JRO Construction, 201 DPR 703, 711 (2019); IG Builders et al. v. BBVAPR, 185 DPR 307, 337-338 (2012). A

pesar de ser un recurso procesal excepcional y discrecional, el tribunal revisor no debe perder de vista las demás áreas del derecho. Mun. de Caguas v. JRO Construction, *supra,* pág. 711. La Regla 52.1 de Procedimiento Civil, dispone que, como norma general, este Tribunal de Apelaciones solo expedirá dicho recurso en dos situaciones particulares, siendo estas: (1) cuando se recurra de una resolución u orden bajo las Reglas 56 y 57; o (2) cuando se recurra de la denegatoria de una moción de carácter dispositivo. 32 LPRA Ap. V, R. 52.1.

Sin embargo, como excepción a lo mencionado anteriormente, este foro apelativo intermedio podrá revisar órdenes o resoluciones interlocutorias dictadas por el TPI cuando se recurra de lo siguiente: (1) decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales; (2) asuntos relativos a privilegios evidenciarios; (3) anotaciones de rebeldía; (4) en casos de relaciones de familia; y (5) en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Íd.

Así, con el objetivo de ejercer de manera prudente nuestra facultad discrecional, es preciso acudir a lo dispuesto en la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40. Banco Popular de Puerto Rico v. Gómez Alayón, 213 DPR ___ (2023); 2023 TSPR 145. Esta norma cobra mayor relevancia en situaciones en las que no hay disponibles métodos alternos para asegurar la revisión de la determinación cuestionada. Íd. A esos efectos, la referida Regla establece los siguientes criterios a evaluar:

> A. Si el remedio y la disposición de la decisión recurrida a diferencia de sus fundamentos son contrarios a derecho.
>
> B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F.  Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

 G.  Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. Íd.

Nótese que, distinto al recurso de apelación, el auto de *certiorari*, por ser un recurso discrecional, debe ser utilizado con cautela y por razones de peso. Pueblo v. Díaz de León, 176 DPR 913, 918 (2009). En ese sentido, el Tribunal Supremo de Puerto Rico reiteradamente ha indicado que la *discreción* significa tener poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción. García v. Padró, 165 DPR 324, 334 (2005). También se ha definido como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". Banco Popular de Puerto Rico v.  Gómez Alayón, *supra*, pág. 13. En otras palabras, el adecuado ejercicio de la discreción judicial está "inexorable e indefectiblemente atado al concepto de la razonabilidad". Pueblo v. Ortega Santiago, 125 DPR 203, 211 (1990).  Así pues, un tribunal apelativo no intervendrá con las determinaciones discrecionales de un tribunal sentenciador, a no ser que las decisiones emitidas por este último sean arbitrarias o en abuso de su discreción. S.L.G. Flores, Jiménez v. Colberg, 173 DPR 843 (2008).

**B.**

La doctrina de cosa juzgada constituye un principio fundamental y necesario para la sana administración de la justicia, ya que, por una parte, salvaguarda el interés estatal de que se finalicen los pleitos, y por otra, protege a los ciudadanos de la incomodidad de litigar en más de una ocasión una misma causa. Fonseca et al. v. Hosp. HIMA, 184 DPR 281, 294 (2012). Cuando se presenta ante el foro de instancia una sentencia federal final y firme y a su vez, se plantea la defensa de cosa juzgada, es necesario analizar el fundamento que justificó la jurisdicción del foro federal. Presidential v. Transcaribe, 186 DPR 263, 278 (2012). De este modo, podemos establecer si corresponde aplicar la doctrina de cosa juzgada estatal o la federal. Íd. Así, cuando el tribunal federal asume jurisdicción bajo

la doctrina de cuestión federal, se aplica la norma federal de cosa juzgada. Íd. Por el contrario, si la jurisdicción se fundamenta en la diversidad de ciudadanía, se aplicará la norma estatal de cosa juzgada. Íd. pág. 279.

En el presente caso, la Corte de Quiebras obtuvo jurisdicción a través de la doctrina de cuestión federal, por lo que procederemos a discutir la norma federal de cosa juzgada. Esta doctrina se fundamenta en el interés por garantizar la finalidad, efectividad y certeza de las sentencias. Santiago, González v. Mun. de San Juan, 177 DPR 43, 50 (2009). Para que la doctrina federal de cosa juzgada pueda ser invocada con éxito, es necesario que se cumplan los siguientes requisitos, a saber: (1) identidad de partes; (2) identidad de causas de acción, y (3) una sentencia final que adjudique los méritos de las mismas controversias. Íd., pág. 51. Se considera que hay identidad de partes cuando las personas involucradas en ambos litigios son las mismas, independientemente del rol que desempeñen en cada uno de ellos. Íd. Asimismo, existe identidad de causas cuando "los hechos y los fundamentos de las peticiones son idénticos en lo que afecta a la cuestión planteada". Presidential v. Transcaribe, *supra*, pág. 275. Con respecto al tercer requisito, la Regla 41 (b) de Procedimiento Civil Federal, *supra*, regula lo concerniente al alcance de las sentencias desestimatorias dictadas por el Tribunal de Distrito de los Estados Unidos. En específico, la referida Regla dispone lo siguiente:

> (b) INVOLUNTARY DISMISSAL; EFFECT. If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. **Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits.** 28 USC App. R. 41 (b). (énfasis suplido).

En otras palabras, una sentencia desestimatoria amparada por la Regla 41 de Procedimiento Civil Federal, *supra*, se considera una adjudicación sobre los méritos, salvo que el Tribunal de Distrito DE LOS Estados Unidos decida lo contrario o que la desestimación se haya dictado por alguno de los siguientes fundamentos: (1) falta de jurisdicción; (2) foro territorial inadecuado y (3) dejar de acumular a una parte. Santiago,

González v. Mun. de San Juan, *supra*, págs. 52-53. No obstante lo anterior, el Tribunal Supremo de Estados Unidos ha aclarado que la frase "adjudication upon the merits" de la mencionada Regla significa que, a diferencia de una desestimación sin perjuicio, la desestimación de un caso impide volver a presentar la misma reclamación en el tribunal, lo cual es una condición necesaria **pero no suficiente para que tenga efecto preclusivo de reclamaciones en otros tribunales**. Semtek Intern. Inc. v. Lockheed Martin Corp., *supra*, pág. 506. **Esto es, el hecho de que una causa de acción se haya desestimado en un foro federal al amparo de la Regla 41 de Procedimiento Civil Federal, *supra*, no precluye que el promovente de la acción pueda instar la misma ante un foro distinto, como lo son los tribunales estatales**.

## C.

Con el propósito esencial de promover la estabilidad social y económica de las relaciones bilaterales, nuestro ordenamiento jurídico ha instituido, mediante el Código Civil, disposiciones legales que regulan la figura de la prescripción y las formas de interrumpirla.

El Artículo 1861 del Código Civil de 1930, vigente al momento de los hechos, regula la figura de prescripción y dispone que "[l]as acciones prescriben por el mero lapso del tiempo fijado por la ley". 31 LPRA sec. 5291. A raíz de ello, nuestro máximo foro judicial ha definido la prescripción como "una figura que extingue un derecho debido a que una parte no lo ejerce en un período de tiempo determinado por ley". Rivera Ruiz v. Mun. De Ponce, 196 DPR 410, 415 (2016).

En cuanto a la prescripción extintiva, el plazo o término provisto por la ley para el ejercicio de un derecho o acción juega un rol esencial en instrumentar el interés del estado en la solución rápida de las controversias. Por esto, el término dispuesto está predicado en el objetivo de (1) proteger al deudor de reclamaciones tan remotas que lo posicionen en un estado de indefensión y (2) estimular el pronto reclamo de las obligaciones legales y procurar, por tanto, la tranquilidad del obligado contra la pendencia indefinida de una acción legal en su contra. Cintrón v. E.L.A., 127 DPR 582,

588-589 (1990). La prescripción es una institución que se fundamenta "en el imperativo de castigar la inercia en el ejercicio de los derechos" para con ello, evitar litigios de difícil adjudicación por su antigüedad. Zambrana Maldonado v. E.L.A., 129 DPR 740, 751 (1992). Así es que "la prescripción extintiva está basada en una presunción 'iuris tantum' de abandono, que admite prueba en contra, la existencia de una voluntad manifestada y probada, contraria a la prescripción, destruye aquella presunción, quedando impedida su consumación". Íd., pág. 752.

**En los casos en que se imputa fraude de acreedores, la parte promovente cuenta con un término prescriptivo de cuatro (4) años para incoar la acción.** 31 LPRA sec. 3500. No obstante lo anterior, como en todo plazo prescriptivo, el titular del derecho puede extender el mencionado plazo de cuatro (4) año si dentro de ese plazo lleva a cabo una acción afirmativa dirigida a interrumpirlo. El resultado será que el plazo prescriptivo comenzará a contarse de nuevo a partir del acto interruptor, prolongando así la vida del derecho o acción que se pretende ejercitar. Cintrón v. E.L.A., *supra*, pág. 592. Así pues, **el término prescriptivo puede quedar interrumpido por su ejercicio ante los tribunales**, por reclamación extrajudicial del acreedor y por cualquier acto de reconocimiento de la deuda por el deudor. Art. 1873 el Código Civil, 31 LPRA sec. 5303. En este sentido, se ha establecido que "[e]l acto interruptivo *representa la manifestación inequívoca de una voluntad contraria al mantenimiento de la situación inerte manifestada con anterioridad a que el plazo de deliberación se agote*". García Aponte, *et al.* v. E.L.A., *et al.*, 135 DPR 137, 143 (1994) (énfasis en el original).

**III.**

En el presente caso, los Peticionarios nos solicitaron la revocación de la *Resolución* del TPI, a través de la cual se declaró "No Ha Lugar" la "**Moción de Desestimación**" interpuesta por ellos. En síntesis, plantean que el TPI erró al denegar la referida solicitud amparada en la doctrina de cosa juzgada y al no aplicar el término de la acción rescisoria por fraude de acreedores.

Surge del expediente ante nuestra consideración que el 16 de abril de 2004 MR presentó una demanda en el caso núm. K DC2004-0372 en contra de The Village por cobro de dinero. Varios años después, el 20 de diciembre de 2013, las corporaciones Medio Mundo, All Hands y The Village realizaron diversas transacciones, las cuales el Recurrido sostiene que se llevaron a cabo en perjuicio de los acreedores. Así las cosas, el 26 de septiembre de 2014, el foro primario emitió una *Sentencia* en la cual ordenó a The Village a pagarle a MR cierta cantidad de dinero. Posteriormente, el 15 de marzo de 2016, The Village presentó una petición voluntaria de quiebra ante la Corte de Quiebras federal. Un año después, **el 20 de abril de 2017**, MR presentó ante dicho foro varias reclamaciones contra The Village por alegadas transacciones fraudulentas. El 18 de septiembre de 2017, dichas reclamaciones fueron desestimadas debido a que MR no cumplió con las órdenes del tribunal, específicamente por no presentar la oposición a una moción de desestimación. Finalmente, el 26 de diciembre de 2019, el Recurrido presentó la "**Demanda**" de autos en contra de los Peticionarios sobre cobro de dinero, fraude de acreedores, daños y perjuicios y nulidad de contrato.

Tras examinar los documentos que constan en el legajo apelativo, incluyendo la "**Moción de Desestimación**", su *Oposición*, la *Réplica* y los correspondientes memorandos, no encontramos base que respalde la expedición del presente recurso discrecional. Evaluados los hechos particulares de este caso, resolvemos que el TPI no abusó de su discreción al determinar que la desestimación de la controversia basada en la doctrina de cosa juzgada no procede y que la acción para pedir la rescisión del contrato no está prescrita. Esto pues, el hecho de que una causa de acción se haya desestimado en un foro federal, al amparo de la Regla 41 (b) de Procedimiento Civil Federal, *supra*, **no impide que dicha reclamación sea presentada nuevamente en un foro distinto al que se radicó inicialmente**, conforme lo resuelto por el Tribunal Supremo de los Estados Unidos en Semtek Intern. Inc. v. Lockheed Martin Corp., *supra*. Esto, pues, a la luz de lo resuelto en dicho precedente, el efecto de adjudicación en los

méritos que acarrea la Regla 41 (b) de Procedimiento Civil Federal, *supra*, es únicamente en el tribunal en el que inicialmente se presentó la causa de acción indistinto del fundamento bajo el cual el foro federal asumió jurisdicción. *Véase*, Íd., pág. 506. Esto cobra mayor relevancia cuando, como en el caso de autos, se asumió jurisdicción por motivo de una cuestión federal que activó la norma de *res judicata* federal.

Además, si bien es cierto que desde el 20 de enero de 2013 hasta el 26 de diciembre de 2019 han transcurrido más de cuatro (4) años, no es menos cierto que el término prescriptivo para pedir la rescisión de la escritura constituida en un presunto fraude de acreedores fue interrumpido por la reclamación interpuesta por MR ante la Corte de Quiebras federal el 20 de abril de 2017. Por tanto, dicho plazo comenzó a transcurrir nuevamente a partir de dicha fecha para propósitos prescriptivos.

En vista de lo anterior, somos de la opinión de que el caso en cuestión no satisface ninguno de los criterios establecidos en la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra,* que exigiría la expedición del auto de *certiorari* para reemplazar el criterio del TPI por el nuestro.

**IV.**

Por los fundamentos que anteceden, *denegamos* la expedición del auto de *certiorari* presentado ante nuestra consideración.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones