ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VII

| ANTHONY PAGÁN ALBELO Y SLG Y OTROS<br><br>Apelantes<br><br>v.<br><br>ABBOTT LABORATORIES (PUERTO RICO) INCORPORATED Y OTROS<br><br>Apelados | KLAN202400975 | Apelación procedente del Tribunal de Primera Instancia, Sala de Arecibo<br><br>Caso Núm.: AR2019CV01586<br><br>Sobre: Impericia Médica |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, el Juez Ronda Del Toro y el Juez Pérez Ocasio

**Ronda Del Toro, Juez Ponente**

# SENTENCIA

En San Juan, Puerto Rico a 20 de diciembre de 2024.

Anthony Pagán Albelo, su esposa Yaritza Núñez García, por sí y por la Sociedad de Gananciales compuesta por ambos (Parte Apelante), solicitan que dejemos sin efecto la *Sentencia Parcial* que emitió el 1ro de octubre de 2024, el Tribunal de Primera Instancia, Sala de Arecibo. Mediante esta, el Foro Primario desestimó, por prescripción, la acción promovida por los Apelantes contra el Dr. Ángel E. Rivera Negrón y la Dra. Annette E. Martínez Padilla, (Parte Apelada).

Por los fundamentos que exponemos a continuación, *Confirmamos* la Sentencia Parcial apelada.

## I.

El 23 de agosto de 2019, la Parte Apelante presentó una demanda de daños y perjuicios por impericia médica en contra de Abbott Laboratories Puerto Rico Inc., la señora Ileana Carrión, Hospital Manatí Medical Center y la doctora María E. Medina Olivera.

Número Identificador
SEN2024 _____

Alegaron, en síntesis, que el 28 de septiembre de 2018, el señor Anthony Pagán Albelo, mientras laboraba en Abbott, sintió mareos, visión borrosa, desbalance, falta de coordinación, dificultad para caminar y un intenso dolor de cabeza. Que por este evento su esposa lo llevó al Manatí Medical Center. Allí le realizaron ciertos estudios y luego le dieron de alta.

Sostuvo que los días 1 y 3 de octubre de 2018 acudió al consultorio del doctor Ángel E. Rivera Negrón. Que este le ordenó un MRI con contraste intravenoso, el cual reflejó un infarto cerebral isquémico de carácter subagudo del territorio de la arteria cerebral posterior. Adujo que el 4 de octubre de 2018, acudió al Manatí Medical Center donde le diagnosticaron un accidente cerebro vascular agudo. Ese día, fue admitido en el Hospital.

Surge de la demanda que, luego de otros estudios, el 6 de octubre de 2018, la neuróloga doctora Annette E. Martínez Padilla evaluó al señor Pagán Albelo, más el 11 de octubre de 2018 fue dado de alta. Indicó que el 29 de octubre de 2018 acudió al consultorio del doctor Rivera Negrón, quien documentó que el paciente quedó hemipléjico tras el infarto cerebral afectando el lado derecho dominante, con ceguera e incapacitado para trabajar.

En la demanda el señor Pagán Albelo alegó negligencia de su patrono Abbott, pero luego, esta acción fue desestimada. También le reclamó al Manatí Medical Center y la doctora Medina Olivera. Junto a la demanda anejó el Informe Médico Pericial que emitió el doctor Edwin Miranda Aponte el 12 de enero de 2019 y el *curriculum vitae* de este.

Los demandados contestaron la demanda. Luego de otros trámites, el 2 de septiembre de 2021, el demandante presentó una *Solicitud de Autorización para Enmendar la Demanda* con el

propósito de incluir a los doctores Ángel E. Rivera Negrón y Annette E. Martínez Padilla. Adujo que, como parte del descubrimiento de prueba obtuvo los récords médicos. Que el 3 de marzo de 2021 se los entregaron a su representante legal y el 14 de abril de 2021 contrataron al neurólogo doctor Glenn J. Garayalde Cotroneo. Que el doctor Garayalde encontró que los daños que incapacitaron al demandante también se debieron, a que, según el MRI realizado el **3 de septiembre de 2019**, luego de incoada la demanda, el señor Pagán Albelo sufrió otro derrame en el lado izquierdo de su cerebro. Sostuvo la parte demandante que la verdadera causa de este evento no fue detectada, documentada, o tratada por los médicos del Hospital Manatí Medical Center, ni los doctores Annette E. Martínez Padilla y Ángel E. Rivera Negrón. Acentuaron que los facultativos estuvieron a cargo del cuidado médico del señor Pagán Albelo durante la corta ventana de tiempo disponible para este tipo de eventos. Unieron a la moción el informe pericial suplementario que emitió el doctor Miranda Aponte el 6 de agosto de 2021, a tenor con la evaluación del neurólogo, doctor Garayalde.

Los demandados contestaron la Segunda Demanda Enmendada. Así las cosas, el 13 de marzo de 2024 Manatí Medical Center incoó una Solicitud de Sentencia Sumaria Parcial.

Asimismo, el 14 de marzo de 2024, el doctor Ángel E. Rivera Negrón presentó una *Moción de Sentencia Sumaria* para que se desestimara la demanda por prescripción. Alegó que desde que ocurrieron los hechos la parte demandante conocía todos los elementos para ejercer su causa de acción. Además, que el perito evaluó todos los expedientes médicos que le llevaron a rendir un informe el 12 de enero de 2019 y decidió cambiar su opinión más de dos (2) años después de prescrita la acción contra los médicos.

El 19 de marzo de 2024, la doctora Martínez Padilla, se unió al petitorio del doctor Rivera Negrón.

El 19 de abril de 2024, los demandantes se opusieron a las solicitudes de sentencia sumaria. Como parte de sus argumentos, incluyeron porciones de la transcripción de la toma de deposición del perito doctor Miranda Aponte. Adjuntaron también, el informe que rindió el doctor Glenn Garayalde y el MRI que se realizó al señor Pagán Albelo el 3 de septiembre de 2019, luego de incoada la demanda.

Examinado el asunto, el Tribunal declaró *Ha Lugar* la Moción de Sentencia Sumaria presentada por el doctor Rivera Negrón y la doctora Martínez Padilla, por entender que la causa de acción contra ellos estaba prescrita. El Foro de Instancia acogió las determinaciones de hechos propuestas por el doctor Rivera Negrón, entre ellas, las siguientes:

1. La parte demandante contrató como perito de negligencia al Dr. Edwin Miranda Aponte y a base de su opinión pericial escrita radicó una demanda reclamando daños por impericia médica.

2. En la demanda original presentada el 26 de agosto de 2019 se mencionan las intervenciones del Dr. Rivera Negrón con el paciente en octubre de 2018.

3. En la primera demanda enmendada presentada el 13 de noviembre de 2019 se mencionan las intervenciones del Dr. Rivera Negrón con el paciente en octubre de 2018.

4. En la segunda demanda enmendada presentada el 2 de septiembre de 2021 se mencionan las intervenciones del Dr. Rivera Negrón con el paciente en octubre de 2018.

5. El 15 de agosto de 2022 se le tomó deposición al demandante Sr. Pagán Albelo.

[6] …

[7] …

8. El 28 de septiembre de 2018 sufrió un malestar en su trabajo que lo llevó a recibir atención de los servicios que provee el patrono Abbott Laboratories.

9. Ese mismo día acudió a la Sala de Emergencias del Hospital Manatí Medical Center.

10. En Manatí Medical Center fue atendido por la codemandada Dra. María E. Medina Oliveras.

11. El Sr. Pagán Albelo fue dado de alta el 28 de septiembre de 2018.

12. El 1 de octubre de 2018 el Sr. Pagán Albelo fue atendido por el Dr. Rivera Negrón en su oficina.

13. El Dr. Rivera Negrón le ordenó un MRI al Sr. Pagán Albelo.

14. El 2 de octubre de 2018 le realizaron el MRI al Sr. Pagán Albelo.

15. El 3 de octubre de 2018 el Sr. Pagán Albelo visitó la oficina del Dr. Rivera Negrón.

16. El 3 de octubre de 2018 el Dr. Rivera Negrón ordenó que se realizara otro MRI, esta vez con contraste.

17. El 4 de octubre de 2018 se le realizó el CT con contraste al Sr. Pagán Albelo.

18. El 4 de octubre de 2018 el Dr. Rivera Negrón instruyó al Sr. Pagán Albelo que fuera al hospital.

19. El Sr. Pagán Albelo fue a la Sala de Emergencias del Hospital Manatí Medical Center.

20. En el Manatí Medical Center le realizaron un CT Scan del cerebro que reflejó isquemia aguda del lóbulo occipital derecho.

21. El Sr. Pagán Albelo fue admitido al Hospital Manatí Medical Center.

22. El Sr. Pagán Albelo declaró en su deposición que durante esa admisión sufrió un episodio que describe como que le apagaron la luz.

23. El Sr. Pagán Albelo declaró en su deposición que durante esa admisión sufrió debilidad en el lado derecho.

24. El Sr. Pagán Albelo declaró en su deposición que se le cayó el tenedor que tenía en la mano mientras comía.

25. El Sr. Pagán Albelo declaró en su deposición que ese evento donde sintió que le apagaron la luz se lo contó a su abogado desde la primera ocasión que hablaron.

26.El Sr. Pagán Albelo declaró en su deposición que el momento en que se le apagó la luz él no lo olvida.

27.El Sr. Pagán Albelo declaró en su deposición que el único evento que él recuerda de su hospitalización en el Manatí Medical Center del 4 al 11 de octubre de 2018 es cuando se le apaga todo.

28.En el Manatí Medical Center se le realizó un MRI sin contraste que indicaba que había sufrido un infarto isquémico agudo de localización parieto occipital derecho, así como un infarto isquémico agudo derecho con signos de necrosis laminar cortical.

29.El 11 de octubre de 2018 el Sr. Pagán Albelo fue dado de alta.

[30] …

31.El 19 de agosto de 2022 se le tomó la deposición a la demandante Sra. Yaritza Núñez García.

[32] …

33.La Sra. Núñez declaró en su deposición que fue el viernes, refiriéndose al 5 de octubre de 2018, que el Sr. Pagán Albelo estaba llorando porque no veía.

[34] …

[35] …

[36] …

37.La Sra. Núñez declaró en su deposición que tomó la decisión de demandar después que el esposo salió del hospital.

38.La Sra. Núñez declaró en su deposición que tomó la decisión de demandar por lo que vivió con el esposo en el hospital.

39.La Sra. Núñez declaró en su deposición que el 5 de octubre de 2018 la suegra le dijo que el esposo se había quedado sin vista.

40.La Sra. Núñez declaró en su deposición que cuando fue a ver a su esposo el 5 de octubre de 2018 "ya a Anthony le había sucedido el evento."

41.La Sra. Núñez declaró en su deposición que la suegra le dijo que estaba comiendo y se le cayó el cubierto y empezó a gritar.

42.El 26 de agosto de 2022 se le tomó deposición a la testigo, y madre del demandante, Sra. Milagros Albelo Soler.

[43] …

[44] …

45. La Sra. Albelo Soler declaró en su deposición que el día 5 de octubre a su hijo se le cayó la mano derecha con todo y cubierto, con toda la comida mientras se encontraba en la habitación del Manatí Medical Center.

46. La Sra. Albelo Soler declaró en su deposición que vio cuando al Sr. Pagán Albelo se le cayó la comida, se le cayó el brazo y dijo que no veía mientras se encontraba en la habitación del Manatí Medical Center.

47. La Sra. Albelo Soler declaró en su deposición que luego de ese evento a su hijo lo llevaron a la unidad de cuidado intensivo del Manatí Medical Center.

[48] …

[49] …

[50] …

[51] …

52. La Sra. Albelo Soler declaró en su deposición que el Dr. Ángel Rivera le dijo que a su hijo le había dado un derrame.

53. La Sra. Albelo Soler declaró en su deposición que lo ocurrido el 5 de octubre fue un evento traumático que nunca va a olvidar.

54. El perito de la parte demandante es el Dr. Edwin Miranda Aponte.

55. El Dr. Miranda Aponte rindió un informe pericial con fecha del 12 de enero de 2019.

56. El Dr. Miranda Aponte examinó el expediente del Sr. Pagán Albelo en la oficina del Dr. Rivera Negrón para rendir su informe pericial.

57. El Dr. Miranda Aponte examinó el expediente del Sr. Pagán Albelo en el Hospital Manatí Medical Center para rendir su informe pericial.

58. En su informe del 12 de enero de 2019 el Dr. Miranda Aponte incluye sus opiniones de negligencia.

59. El informe del 12 de enero de 2019 del Dr. Miranda Aponte no contiene opinión alguna contra el Dr. Rivera Negrón.

60. El 6 de agosto de 2021 el Dr. Miranda Aponte notifica un informe pericial suplementario.

61. El informe pericial suplementario del Dr. Miranda Aponte incluye los mismos expedientes

médicos que había revisado para el informe original, en cuanto al manejo, evaluación y tratamiento brindado por el Dr. Rivera Negrón al paciente en el Hospital Manatí Medical Center.

62. El Dr. Miranda Aponte no recibió ninguna información nueva en cuanto al tratamiento médico brindado por el Dr. Rivera Negrón al Sr. Pagán Albelo.

63. La opinión del Dr. Miranda Aponte sobre el Dr. Rivera Negrón se basa en los mismos hechos y documentos que tuvo ante si para el informe original.

64. El 27 de diciembre de 2022 se comenzó la deposición al Dr. Miranda Aponte.

65. El Dr. Miranda Aponte declaró bajo juramento en esa deposición.

66. El Dr. Miranda Aponte declaró que para el segundo informe evaluó estudios e informes posteriores al 11 de octubre de 2018.

67. El 21 de febrero de 2023 continuó la toma de la deposición al Dr. Miranda Aponte.

68. El Dr. Miranda Aponte declaró que para rendir su informe del 12 de enero de 2019 revisó el récord médico del Sr. Pagán Albelo en la Sala de Emergencia de Manatí Medical Center del 28 de septiembre de 2018.

69. El Dr. Miranda Aponte declaró que para rendir su informe del 12 de enero de 2019 revisó el récord médico del Sr. Pagán Albelo en Manatí Medical Center del 4 al 11 de octubre de 2018.

70. El Dr. Miranda Aponte declaró que para rendir su informe del 12 de enero de 2019 revisó el récord médico del Sr. Pagán Albelo en la oficina del Dr. Rivera Negrón del 2 de octubre de 2018 al 3 de diciembre de 2018.

71. El Dr. Miranda Aponte declaró que para rendir su informe del 12 de enero de 2019 revisó el informe radiológico del Sr. Pagán Albelo del 4 de octubre de 2018.

72. El Dr. Miranda Aponte declaró que para rendir su informe del 12 de enero de 2019 revisó el récord médico del Sr. Pagán Albelo en la oficina del Dr. Darío Goitia del 5 de noviembre de 2018.

73. El Dr. Miranda Aponte declaró que para la redacción del informe pericial del 12 de enero de 2019 no omitió información relevante a los hechos.

74. El Dr. Miranda Aponte declaró que todos los documentos fueron revisados sin dejar nada para rendir su opinión pericial del 12 de enero de 2019.

75. El Dr. Miranda Aponte declaró que en su opinión del 12 de enero de 2019 no tiene opinión adversa en cuanto a los hechos del 4 al 11 de octubre de 2019 en el Manatí Medical Center.

76. El Dr. Miranda Aponte declaró que en su opinión sobre la admisión del 4 al 11 de octubre de 2018 es que fue adecuada.

77. El Dr. Miranda Aponte declaró que el expediente de Abbott del 28 de septiembre del 2018, el expediente médico del Manatí Medical Center del 28 de septiembre del 2018, el expediente del 4 al 11 de octubre del 2018 de Manatí Medical Center, el expediente del Doctor Goitia y los expedientes de la oficina de Rivera Negrón fueron la base de su opinión para rendir el primer informe pericial.

78. El Dr. Miranda Aponte declaró que esos expedientes son la base para su opinión en el segundo informe pericial.

79. El Dr. Miranda Aponte declaró que rinde su primera opinión pericial el 12 de enero de 2019 conociendo la información de la admisión del 4 al 11 de octubre de 2018.

80. El Dr. Miranda Aponte declaró que el segundo CVA que tuvo el paciente era identificable desde que rindió el primer informe.

81. El Dr. Miranda Aponte declaró que al revisar los documentos para rendir su primer informe pasó por alto el segundo CVA.

82. El Dr. Miranda Aponte declaró que los actos y omisiones que identifica en el informe suplementario del 6 de agosto de 2021 los pasó por alto en el primer informe pericial.

[83] …

Tras exponer estos hechos y el derecho aplicable, el Foro Primario desestimó la acción con las siguientes expresiones:

En el caso de epígrafe, la parte demandante alegó que, como resultado de la consulta a un segundo perito, el Dr. Glenn J. Garayalde Cotroneo, contratado el 14 de abril de 2021, sus abogados se reunieron con dicho perito el 21 de mayo de 2021 y este médico les brindó información sobre hallazgos en pruebas de MRI y CT realizadas al Sr. Pagán por las cuales alegan que los doctores Rivera Negrón y Martínez Padilla le responden en daños.

[…]

En la página 6 de su oposición, la parte demandante indica en parte lo siguiente:

"Los demandados no pueden probarle a este Honorable Tribunal ni un solo hecho que demuestre que algún médico le dijo a Anthony que parte de sus daños (los asociados a su lado derecho del cuerpo) se habían debido a un derrame en el lado izquierdo de su cerebro. Eso nunca ocurrió hasta que el Dr. Garayalde lo comunicó como conclusión de su informe pericial sobre los daños físicos sufridos por Anthony. Con toda la diligencia, los suscribientes le comunicamos esto al perito en negligencia, Dr. Miranda Aponte, quien diligentemente también evaluó lo hallado por el Dr. Garayalde y en consecuencia suplementó su informe pericial del 12 de enero de 2019, el cual obviamente había realizado antes de que existiera el MRI del 3 de septiembre de 2019 incluido como Anejo 2 de esta oposición..."

De lo antes citado surge claramente que una vez el Dr. Edwin Miranda lee el informe del Dr. Garayalde, volvió a revisar el récord médico de la admisión del 4 al 11 de octubre de 2018 durante la cual intervinieron como médicos del demandante el Dr. Rivera y la Dra. Martínez. De esta nueva revisión de los mismos documentos es que nace el segundo informe.

Más adelante, la Sala de Instancia explicó lo siguiente:

El supuesto segundo CVA que el Dr. Miranda usa como base para sus nuevas imputaciones de negligencia en su segundo informe, era identificable en el récord médico desde que rindió el primer informe. Por lo tanto, admite que al revisar los documentos para rendir su primer informe este galeno "pasó por alto" el segundo CVA. Los supuestos actos y omisiones negligentes del Dr. Rivera y la Dra. Martinez que el Dr. Miranda identifica en su segundo informe del 6 de agosto de 2021 los "pasó por alto" al examinar el récord médico para rendir el primer informe pericial. […]

Cuando una parte contrata a un perito para que evalúe un récord médico y le informe si hay impericia y el perito emite un informe donde "pasa por alto" la supuesta negligencia de algunos médicos, esto no interrumpe el término prescriptivo hasta que otro perito o el mismo perito se percate de lo que se "pasó por alto." En este caso no había un impedimento factico o material que impidiera al perito contratado por el demandante conocer quiénes eran los posibles responsables. La doctrina cognoscitiva del daño para el comienzo del periodo prescriptivo no puede estar supeditada a los errores del perito contratado por la parte demandante. Esto permitiría que en cualquier momento luego de una intervención médica el demandante alegue que a base de lo que le expresó un nuevo perito o el mismo perito anterior, acaba de percatarse de que tiene una causa de acción contra

unos médicos adicionales a los que ya había incluido en una demanda. Esto equivaldría a dejar sin efecto el periodo prescriptivo de un año en los casos a los cuales le aplica dicho término sustantivo. [...]

Insatisfechos con la determinación de la Sala de Instancia, los Demandantes acudieron ante esta curia, con los siguientes planteamientos de error:

**Primero:** Erró el Tribunal de Primera Instancia al disponer por la vía sumaria de una reclamación cuyos hechos medulares están en controversia.

**Segundo:** Erró el Tribunal de Primera Instancia al fundamentar su sentencia desestimatoria por prescripción sobre un hecho medular que no es correcto ni se sustenta con la prueba sometida por las partes al amparo de la Regla 36 de Procedimiento Civil.

**Tercero:** Erró el Tribunal de Primera Instancia al concluir que la acumulación mediante una segunda demanda de dos doctores que no habían sido traídos al pleito cuando se presentó la demanda original obedeció a hechos medulares que la parte demandante o su perito de negligencia conocían o debían conocer al momento de presentarse la demanda original.

**Cuarto:** Erró el Tribunal de Primera Instancia al concluir que la reclamación instada mediante una segunda demanda enmendada contra dos doctores que no habían sido traídos al pleito cuando se presentó la demanda original estaba prescrita porque los demandantes conocían todos los elementos de su causa de acción por impericia médica contra dichos doctores al momento de prestarse la demanda original.

Los doctores Rivera Negrón y Martínez Padilla presentaron su oposición al recurso, por lo que, evaluamos.

## II.

### A. Sentencia Sumaria

La sentencia sumaria es el mecanismo procesal adecuado para resolver casos en los que no es necesaria la celebración de un juicio por no existir duda sobre los hechos esenciales, contarse con toda la evidencia necesaria y solo restar la aplicación del derecho. 32 LPRA Ap. V, R. 36.3(e); <u>Banco Popular de Puerto Rico</u>

v. Laureano Zorrilla Posada y otro, 2024 TSPR 62, 213 DPR __ (2024); Lugo Montalvo v. Sol Meliá Vacation, 194 DPR 209, 225 (2015); Córdova Dexter v. Sucn. Ferraiuoli, 182 DPR 541, 555-556 (2011).

Para que proceda este mecanismo es necesario que de los documentos no controvertidos surja que no hay una controversia real y sustancial sobre los hechos del caso. Universal Ins. y otro v. ELA y otros, 211 DPR 455, 471 (2023); Ramos Pérez v. Univisión, 178 DPR 200, 214 (2010). Un hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. Universal Ins. y otro v. ELA y otros, supra, pág. 472; Meléndez González et al. v M. Cuebas, 193 DPR 100, 110 (2015); Ramos Pérez v. Univisión, supra, pág. 213.

La parte que se oponga a que se dicte sentencia sumaria, deberá controvertir la prueba presentada por la parte que la solicita. Regla 36.3(b) de Procedimiento Civil, supra. La parte promovida no podrá descansar solamente en las aseveraciones o negaciones contenidas en sus alegaciones, sino que deberá contestar en forma detallada y específica, como lo hiciera la parte solicitante. Bobé et al. v. UBS Financial Services, 198 DPR 6, 21 (2017); 32 LPRA Ap. V, R. 36.3(e). Al dictar sentencia sumaria el tribunal deberá analizar los documentos que acompañan la solicitud de sentencia sumaria y los documentos incluidos con la moción en oposición, así como aquellos que obren en el expediente del tribunal. S.L.G. Szendrey-Ramos v. Consejo Titulares, 184 DPR 133, 167 (2011). De no haber hechos materiales en controversia, el tribunal dictará sentencia sumaria siempre que proceda en derecho. Cruz, López v. Casa Bella y otros, 2024 TSPR 47, 213 DPR ____ (2024).

De otro lado, el Tribunal Supremo ha destacado que no es recomendable utilizar la moción de sentencia sumaria en aquellos casos donde exista controversia sobre elementos subjetivos, de intención, propósitos mentales o negligencia; incluso, cuando el factor de credibilidad es esencial y está en disputa. Cruz, López y otros v. Casa Bella y otros, *supra*; Ramos Pérez v. Univisión, *supra*, pág. 219.

Se ha pautado que el foro apelativo intermedio se encuentra en la misma posición que el Tribunal de Primera Instancia al momento de revisar solicitudes de sentencia sumaria. Banco Popular de Puerto Rico v. Laureano Zorrilla Posada y otro, *supra*; Meléndez González et al. v. M. Cuebas, *supra*, pág. 118; Vera v. Dr. Bravo, 161 DPR 308, 334 (2004). A tenor con lo anterior, al revisar una determinación de primera instancia, sobre una solicitud de sentencia sumaria, como foro intermedio podemos: (1) considerar los documentos que se presentaron ante el foro primario, (2) determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y (3) determinar si el derecho se aplicó de forma correcta. Segarra Rivera v. Int'l Shipping, et al., 208 DPR 964, 981 (2022); Meléndez González et al. v. M. Cuebas, *supra*, pág. 114.

### B. Prescripción

El Artículo 1802 del derogado Código Civil de 1930, vigente al momento de los hechos que suscitan esta reclamación,[1] indicaba que, "el que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado." 31 LPRA ant. sec. 5141. Además, Cruz Flores Et Al v.

---

[1] Derogado por la Ley Número 55 de 1 de junio de 2020, Código Civil de Puerto Rico de 2020.

Hosp. Rider Et Al, 210 DPR 465, 483 (2022); Pérez Et Al v. Lares Medical, Et Al, 207 DPR 965, 976 (2021).

El Artículo 1861 del Código Civil, establecía que, "[l]as acciones prescriben por el mero lapso del tiempo fijado por la ley". 31 LPRA ant. sec. 5291. El término para ejercer las acciones se puede interrumpir de tres maneras, a saber, por "su ejercicio ante los tribunales, por reclamación extrajudicial del acreedor y por cualquier acto de reconocimiento de la deuda por el deudor". Artículo 1873 del Código Civil, 31 LPRA ant. sec. 5303.

El Artículo 1868 del Código Civil, mencionaba que prescriben por el término de un (1) año las acciones para exigir la responsabilidad civil por las obligaciones derivadas de la culpa o negligencia de que se trata en el Artículo 1802, desde que lo supo el agraviado. 31 LPRA ant. sec. 5298. Como norma general, el término prescriptivo de un año comienza a transcurrir desde que el agraviado tuvo, o debió tener, conocimiento del daño que sufrió y estuvo en posición de ejercer su causa de acción. Art. 1869 del Código Civil, 31 LPRA ant. sec. 5299; Rivera Ruiz v. Mun. De Ponce et al., 196 DPR 410, 416 (2016); Véase, además, Maldonado Rivera v. Suárez y otros, 195 DPR 182, 194 (2016). En este punto, conforme la teoría cognoscitiva del daño, se ha reiterado que este término comienza a transcurrir una vez el perjudicado conoció o debió conocer que sufrió un daño, quién se lo causó, así como los elementos necesarios para ejercitar efectivamente su causa de acción. Maldonado Rivera v. Suárez y otros, supra; Toro Rivera et als. v. ELA et al., 194 DPR 393, 416 (2015).

Ahora bien, si mediante el descubrimiento de prueba u otro medio, el agraviado adviene en conocimiento de la existencia de otro coautor y del resto de los elementos necesarios para

reclamarle, el término prescriptivo contra ese alegado cocausante comenzará a transcurrir en ese momento. Fraguada Bonilla v. Hosp. Aux. Mutuo, 186 DPR 365, 390 (2012). Ello, pues un estatuto de prescripción cuyo efecto sea exigirle a la parte demandante que presente una causa acción antes de tener conocimiento de la existencia de ésta, viola el debido proceso de ley. Fraguada Bonilla v. Hosp. Aux. Mutuo, *supra*; COSSEC et al. v. González López et al., 179 DPR 793, 805-806 (2010); Vera v. Dr. Bravo, *supra*, pág. 327.

El momento en que se conoce o debió conocerse el daño es materia de prueba e interpretación judicial, debido a la multiplicidad de circunstancias que inciden en el conocimiento del daño. Toro Rivera et als. v. ELA et al., *supra*. Si bien parecería un asunto simple, el análisis sobre dicho término y sus efectos jurídicos requiere ponderar, entre otros elementos, la naturaleza o tipo de daños en relación con los hechos en cuestión. Toro Rivera et als. v. ELA et al., *supra*. Pero, "si el desconocimiento se debe a falta de diligencia, entonces no son aplicables estas consideraciones sobre la prescripción". Fraguada Bonilla v. Hosp. Aux. Mutuo, *supra*, pág. 374; COSSEC et al. v. González López et al., *supra*.

## C. Impericia médica

En una acción por impericia médica, el demandante deberá establecer mediante prueba pericial cuáles son los requisitos de cuidado y conocimiento científico requeridos por la profesión en el tratamiento de sus pacientes. Cruz Flores Et Al v. Hosp. Ryder, Et Al, *supra*, págs.486-487; López v. Dr. Cañizares, 163 DPR 119, 133 (2004); Soc. de Gananciales v. Géigel, 145 DPR 663, 673 (1998); Rodríguez Crespo v. Hernández, 121 DPR 639, 650 (1988). Una vez demostrado cuáles son las normas mínimas de

conocimiento y cuidado médico aplicables a la controversia en cuestión, el demandante deberá probar que el demandado incumplió con dichas normas en el tratamiento del paciente y que ello fue la causa de la lesión sufrida. López v. Dr. Cañizares, *supra*, pág. 134.

**III.**

La Parte Apelante alegó que existían hechos medulares en controversia que impedían la disposición sumaria de la acción incoada contra los doctores Rivera Negrón y Martínez Padilla. Expresó que, según la declaración del doctor Miranda Aponte, este no tuvo ante sí los informes radiológicos que evidenciaron un CVA en el lado izquierdo del cerebro del señor Pagán Albelo. Que el informe suplementario que rindió el doctor Miranda Aponte el 6 de agosto de 2021, y que sirvió de base para incluir a los doctores Rivera Negrón y Martínez Padilla, aduce a documentos y estudios radiológicos obtenidos luego de presentada la demanda. Aseveró que esta explicación surgió a partir de la página 40 a la 43 de la deposición del doctor Miranda Aponte. En particular, impugnó las determinaciones de hechos números 78, 80, 81 y 82 por estar fuera de contexto o en controversia.

Evaluamos.

El 23 de agosto de 2019 el señor Anthony Pagán Albelo, su esposa y la sociedad de gananciales presentaron una demanda de daños y perjuicios por impericia médica contra el Manatí Medical Center y otros. Unieron a su reclamación el *Informe Médico Pericial* que rindió el doctor Edwin Miranda Aponte el 12 de enero de 2019.

Luego, el 2 de septiembre de 2021, los demandantes solicitaron agregar en la acción a los doctores Rivera Negrón y Martínez Padilla. Adujeron que, luego de presentar la demanda,

el señor Pagán Albelo se realizó otros estudios de MRI, en particular, el 3 de septiembre de 2019. Que, consecuente al descubrimiento de prueba, el neurólogo doctor Garayalde evaluó estas pruebas. Del resultado de ese análisis, el perito doctor Miranda Aponte, emitió un segundo informe pericial y con este se solicitó enmendar la demanda.

A petición de los doctores Rivera Negrón y Martínez Padilla y, luego de evaluar la oposición del demandante, el Foro Primario desestimó la reclamación contra estos doctores, por estar prescrita. Para ello, el foro primario plasmó en la *Sentencia Parcial*, ochenta y tres (83) determinaciones de hechos, con las conclusiones en derecho y el análisis. En la acción que atendemos, la Parte Apelante cuestionó los siguientes hechos:

78. El Dr. Miranda Aponte declaró que esos expedientes son la base para su opinión en el segundo informe pericial.

80. El Dr. Miranda Aponte declaró que el segundo CVA que tuvo el paciente era identificable desde que rindió el primer informe.

81. El Dr. Miranda Aponte declaró que al revisar los documentos para rendir su primer informe pasó por alto el segundo CVA.

82. El Dr. Miranda Aponte declaró que los actos y omisiones que identifica en el informe suplementario del 6 de agosto de 2021 los pasó por alto en el primer informe pericial.

Según lo solicita la Parte Apelante, revisamos la deposición del Dr. Miranda Aponte para verificar los hechos aquí cuestionados:

**Deposición, Págs. 39-40, Apéndice págs. 1044-1045**

POR LA LCDA. MARILENA ROMÁN GANDULLA:

Muy bien.

P. Okey. Doctor, como no recuerdo bien lo último que yo le pregunté, voy a ir un poquito atrás. Con relación al listado de documentos que habíamos detallado, que sirvieron de base para formular su opinión del primer informe, del 12 de enero del 2019, ¿estamos de acuerdo en que luego de haber revisado esos documentos usted no tenía una opinión adversa en cuanto a la admisión del 4 al 11 de octubre del 2018?

R Cierto.

P Okey. ¿Y lo cierto es que usted entonces el 4 decide realizar un informe suplementario el...2 ? ¿El 2?

LCDO. PEDRO J. RIVERA RIVERA:
El 6 de agosto del 2021.

POR LA LCDA. MARILENA ROMÁN GANDULLA:

P El 6 de agosto del 2021, ¿con únicamente, adicional a lo ya revisado, el informe pericial del neurólogo Garayalde y los tres estudios de resonancia magnética?

R Sí.

**Deposición, pág. 41, Apéndice pág. 1046.**

P Le pregunto si en algún momento usted les informó que usted iba a rendir una segunda opinión.
R Sí.
P ¿En qué momento usted les informó?
R Después de recibir los documentos.
[…]
P Le pregunto si usted le informó a sus abogados, a los abogados del demandante el porqué iba a redactar un segundo informe.
R Sí. Me comuniqué para hacerle saber sobre los resultados de mi investigación y el ejercicio de la evaluación de esos documentos, y el plan de que podía ser un informe suplementario.
P Okey. Doctor, ¿usted me dice que "el plan para rendir un segundo informe"?
R Cierto.
P Okey. ¿Y cuál era el plan?
R Bueno, tenía opiniones al respecto después de evaluar esos documentos.

**Deposición pág. 42, Apéndice pág. 1047**.
P Okey. Doctor, ¿eso quiere decir que luego de haber redactado el informe del 6 de agosto del 2021, en donde usted emite una opinión adversa en cuanto al tratamiento brindado por el doctor Rivera Negrón y la doctora Martínez...?, que usted no había visto antes, ¿correcto?

R Es correcto.
P ¿Eso quiere decir que la opinión que usted rinde originalmente en su informe del 12 de enero del 2019 cambia a los efectos de incluir a esos dos médicos demandados?

R Afirmativo.

P ¿Porque al revisar inicialmente los documentos que se le entregaron para rendir su opinión pericial usted no se percató de que esos dos médicos, según usted, habían cometido actos u omisiones negligentes?

R Yo no diría que no es que no me percaté. Es que revisándolo a la luz del informe del neurólogo y los estudios, entonces fui directamente a revisar esos elementos. Y ahí fue que entonces surgió la opinión para incluirlos en la demanda.

P ¿Eso quiere decir que usted no se percató de que hubo un segundo evento en la admisión del 4 de octubre al 11 de octubre?

**Deposición, pág. 43, Apéndice pág. 1048**

R Bueno, pero condicionado a lo que le acabo de decir, porque no tenía esos documentos.

P Pero la pregunta...

R No podía verlos.

P La pregunta es si no se percató de que hubo un segundo evento en la admisión del 4 de octubre al 11 de octubre.

R No me podía percatar porque no tenía los estudios.

P Okey. Pero esos estudios, Doctor, no eran estudios que tenían tampoco ni el doctor Rivera Negrón ni la doctora Martínez. O sea, usted lo está viendo en retroscopio.
R Cierto.

P Le estoy preguntando...

R Sí, sí, sí.

P Okey. O sea... Vamos entonces, Doctor, ¿eso quiere decir que al rendir su informe de 6 de agosto del 2021 usted identifica un segundo evento?

R Con un segundo evento.

P ¿Cuántos eventos...?

R ¿Usted se refiere a CVA?
P Sí.
R Sí.

**Deposición, pág. 44, apéndice pág. 1049**

LCDA. MELISSA FIGUEROA DEL VALLE:

Permiso, permiso. Es que se está trancando la imagen del doctor Miranda, pero ya volvió a moverse. Está bien. Ya.

POR EL LCDA. MARILENA ROMÁN GANDULLA:

Okey.

P Exacto, CVA.
R Sí, sí.
P Usted menciona en su informe suplementario, a raíz del informe del doctor Garayalde, que hay un segundo evento.

R Cierto.

P Okey. Y ese evento, ¿para usted era identificable desde el momento en que rindió su primer informe?

R Es posible.

P ¿Eso quiere decir que, al revisar esos documentos para rendir su primer informe, eso usted no lo vio, lo pasó por alto?

**R Cierto.**

P Okey.
[…]

POR LA LCDA. MARILENA ROMÁN GANDULLA:

Muy bien.

P Entonces, Doctor, ¿eso quiere decir que los actos y omisiones negligentes que usted identifica en el informe suplementario del 6 de agosto del 2021, todos esos actos y omisiones negligentes que usted identifica, usted los pasó por alto en su primer informe?

**R Cierto.**

[…]

De nuestra revisión, validamos que los hechos 78, 80, 81 y 82, surgen de la deposición que se le tomó al Dr. Miranda Aponte. Para ponerlos en contexto, incluimos también el hecho 77 no cuestionado.

77. El Dr. Miranda Aponte declaró que el expediente de Abbott del 28 de septiembre del 2018, el expediente médico del Manatí Medical Center del 28 de septiembre del 2018, el expediente del 4 al 11 de octubre del 2018 de Manatí Medical Center, el expediente del doctor Goitia y los expedientes de la oficina de Rivera Negrón fueron la base de su opinión para rendir el primer informe pericial.

78. El Dr. Miranda Aponte declaró que esos expedientes son la base para su opinión en el segundo informe pericial. **(Toma de deposición, apéndice pág. 1042).**

80. El Dr. Miranda Aponte declaró que el segundo CVA que tuvo el paciente era identificable desde que rindió el primer informe. **(Toma de deposición, apéndice pág. 1049).**

81. El Dr. Miranda Aponte declaró que al revisar los documentos para rendir su primer informe pasó por alto el segundo CVA. **(Toma de deposición, apéndice pág. 1049).**

82. El Dr. Miranda Aponte declaró que los actos y omisiones que identifica en el informe suplementario del 6 de agosto de 2021 los pasó por alto en el primer informe pericial. **(Toma de deposición, apéndice pág. 1049).**

A partir de estos hechos, y los restantes incluidos en la Sentencia, la Sala de Instancia concluyó que, "los expedientes a los que hace referencia la parte demandante que los llevaron a presentar una segunda demandada enmendada, estaban en poder y posesión de los demandantes antes del 12 de enero de 2019, fecha del informe del perito Miranda Aponte."[2] Agregó que, es "del conocimiento propio de la parte demandante de las intervenciones de estos dos médicos, sin que fueran traídos a este pleito dentro del año que tenía para hacerlo."[3] Más adelante, el Foro Primario expresó que, "El supuesto segundo CVA que el Dr. Miranda usa como base para sus nuevas imputaciones de negligencia en su segundo informe, era identificable en el récord médico desde que rindió el primer informe. Por lo tanto, admite que al revisar los documentos para rendir su primer informe este galeno "pasó por alto" el segundo CVA. Los supuestos actos y omisiones negligentes del Dr. Rivera y la Dra. Martínez que el Dr. Miranda identifica en su segundo informe del 6 de agosto de 2021 los "pasó por alto" al examinar el récord médico para rendir el primer informe pericial".[4] Luego, el Foro Primario expresó que,

---

[2] Sentencia Parcial, pág. 16, Apéndice pág. 1888.
[3] Sentencia Parcial, pág. 16, Apéndice pág. 1888.
[4] Sentencia Parcial, págs. 18-19, Apéndice págs. 1890-1891.

"Cuando una parte contrata a un perito para que evalúe un récord médico y le informe si hay impericia y el perito emite un informe donde "pasa por alto" la supuesta negligencia de algunos médicos, esto no interrumpe el término prescriptivo hasta que otro perito o el mismo perito se percate de lo que se "pasó por alto."[5]   Indicó que, "La doctrina cognoscitiva del daño para el comienzo del periodo prescriptivo no puede estar supeditada a los errores del perito contratado por la parte demandante."[6]

La determinación del Foro Primario es adecuada y razonable.  Los Apelantes indican que la segunda enmienda a la demanda surgió luego de que el señor Pagán Albelo se realizó unos estudios en septiembre de 2019, que evidenciaban otro CVA, pero en el lado izquierdo del cerebro.  Sin embargo, este suceso, según alegan, aparentemente surgió mientras el señor Pagán Albelo estaba hospitalizado en el Manatí Medical Center.  El perito del demandante estudió y revisó el expediente médico de la estancia en el hospital.  En ese momento pudo evaluar la presunta negligencia de los que intervinieron con el paciente.

Los estudios de MRI que el demandante se realizó el luego de incoada la demanda, en nada varían el contenido del expediente médico que tuvo ante su consideración el perito, al rendir su primer informe.  Tan es así que, con los nuevos estudios, e instruido por el neurólogo doctor Garayalde, el doctor Miranda Aponte decidió revisar nuevamente el expediente para entonces percatarse del presunto acto negligente de los doctores Rivera Negrón y Martínez Padilla.  Es decir, el perito Miranda Aponte evaluó el mismo expediente, pero con otra óptica para así enmendar su informe el 6 de agosto de 2021.  Sin embargo, del

---

[5] Sentencia Parcial, pág. 19, Apéndice pág. 1891.
[6] Íd.

expediente ya surgían los eventos que sufrió el demandante mientras estaba recluido en el hospital, los nombres de los médicos tratantes, la respuesta de estos y el tratamiento brindado. La información que surgió de los estudios de MRI, realizados luego de la demanda, más bien sirvieron para explicar o corroborar la información que ya surgía de los expedientes médicos durante el periodo de septiembre a octubre de 2018.

En consecuencia, afirmamos que no estaban en controversia los hechos medulares relacionados al momento en que se debió incluir a los médicos Rivera Negrón y Martínez Padilla como demandados. Por tanto, resulta correcta en Derecho la decisión del Foro Revisado de desestimar la acción contra los referidos facultativos por el fundamento de prescripción.

**IV.**

Por las razones antes expresadas, se confirma la Sentencia Parcial aquí apelada.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones