ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III[1]

| | | |
|---|---|---|
| NELSON RIVERA PÉREZ; JESÚS A. CARRIÓN NARVÁEZ; AGUEDO DE LA TORRE, MIGUEL CASTELLANOS CASTRO<br><br>Apelantes<br><br><br>v.<br><br><br>AGE MANAGEMENT PR LLC; JORGE L. PÉREZ; TIXBY LLC; h/n/c TICKETERA; MANNY MORALES LEMA; COMPAÑÍAS ASEGURADORAS A, B y C<br><br>Apelados | KLAN202500525 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Civil Núm.: SJ2024CV08608<br><br>Sala: 903<br><br><br>Sobre: Pleito de Clase Bajo la Ley de Acción de Clase del Consumidor; Ley Antimonopolística; Dolo Contractual; Daños y Perjuicios |

Panel integrado por su presidente, el Juez Candelaria Rosa, el Juez Salgado Schwarz y el Juez Monge Gómez.

Salgado Schwarz, Carlos G., Juez Ponente

# SENTENCIA

En San Juan, Puerto Rico a 21 de agosto de 2025.

Comparece ante nos Nelson Rivera Pérez; Jesús A. Carrión Narváez; Aguedo de la Torre; Miguel Castellanos Castro (en adelante, "apelantes") para solicitar la revocación de una *Sentencia*[2] emitida el 16 de abril de 2025[3] por el Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante "TPI"). Mediante dicha Sentencia, el foro primario declaró *HA LUGAR* la Moción de Desestimación presentada por AEG Management PR LLC ("AEG"); Jorge L. Pérez ("Sr. Pérez"); Tix.By LLC H/N/C

---

[1] Mediante la Orden Administrativa DJ-2024-062C del 6 de mayo de 2025 se designó al Hon. Carlos I. Candelaria Rosa, Presidente del Panel III, en sustitución del Hon. Félix R. Figueroa Cabán, quien se acogió al retiro el 5 de mayo de 2025.
[2] Véase Entrada #41 de SUMAC.
[3] Notificada el 21 de abril de 2025.

Ticketera ("Ticketera"); Manny Morales Lema ("Sr. Morales"); Compañías Aseguradoras A, B y C (en adelante, "apelados"). Como resultado, se desestimó la Demanda en su totalidad.

Por los fundamentos que exponemos a continuación, se **confirma** la Sentencia apelada.

-I-

En lo aquí pertinente, el 18 de septiembre de 2024 los apelantes presentaron una *Demanda*[4] por violaciones a la *Ley Antimonopolística de Puerto Rico* ("Ley Antimonopolística")[5], responsabilidad extracontractual, dolo y abuso del derecho en contra de los apelados. En resumen, alegaron que, en o alrededor del año 2019, AEG, entidad que administra y maneja varias salas principales para actividades y conciertos en Puerto Rico, otorgó un contrato de exclusividad con Ticketera. Dicho contrato establecía a Ticketera como la única entidad con el derecho a vender y expedir boletos para las actividades que se fuesen a llevar a cabo en dichas facilidades administradas por AEG. Alegaron que el mencionado contrato creó un monopolio sobre las ventas de boletos para las actividades, conciertos y espectáculos que se llevaban a cabo en las facilidades. Adujeron que el propósito del contrato era el de restringir el libre comercio en el mercado de servicios de ventas de boletos y que le otorgaba a Ticketera el poder para imponer cargos por servicios anticompetitivos de manera arbitraria, indiscriminada e irrestricta, en beneficio de AEG y Ticketera.

---

[4] Véase Entrada #1 del Sistema Unificado de Manejo y Administración de Casos (SUMAC)

[5] Ley Núm. 77 de 25 de junio de 1964 (10 LPRA sec. 257 et. seq.)

Específicamente, alegaron que el mencionado acuerdo entre AEG y Ticketera les ha causado daños a los consumidores de los conciertos o actividades llevados acabo en esas facilidades ya que, desde que se originó el contrato de exclusividad, se le han añadido al costo básico de los boletos cargos por servicio inflados, duplicados, ilegales o injustificados, para beneficio económico de los apelados.

Así las cosas, los apelantes mencionaron que son consumidores que han adquirido boletos a través de Ticketera para asistir eventos y actividades celebrados en las facilidades administradas por AEG y que han tenido que pagar por los cargos antes mencionados por los pasados cinco (5) años, durante la vigencia del contrato de exclusividad entre AEG y Ticketera.

En lo pertinente, los apelantes sostienen que la conducta culposa o negligente de los apelados ha causado daños pecuniarios a los apelantes al cobrarles los cargos adicionales al precio base de los boletos, cuyos daños los estiman en más de 70 millones de dólares en los pasados cinco (5) años. Alegan, además, que el cobro de dichos cargos constituye conducta maliciosa que excede los limites del ejercicio del derecho de los apelados a la libre contratación.

El 27 de noviembre de 2024, AEG presentó una *Moción de Desestimación por dejar de exponer hechos que justifiquen la concesión de un remedio*[6]. En dicha moción, AEG argumentó que los apelantes admiten que el contrato entre AEG y Ticketera se otorgó "en o alrededor del año 2019" y que por tal razón la acción estaba prescrita y

---

[6] Véase Entrada #16 de SUMAC.

debía ser desestimada ya que, la Ley Antimonopolio establece un término de cuatro (4) años para instar una acción judicial para recobrar daños bajo dicho estatuto.

También argumentaron que la causa de acción por dolo en la formación de un contrato legalmente no procede, toda vez que, el remedio en tales casos es la restitución de las contraprestaciones, y que, en este caso, es imposible, ya que los apelantes acudieron a los espectáculos y eventos para los cuales pagaron los cargos impugnados y es imposible devolverle a AEG el uso y disfrute de las instalaciones y el goce de los eventos acudidos.

En cuanto a la causa de acción por responsabilidad civil extracontractual, los apelados resaltaron el hecho de que los apelantes solicitaron resarcimiento de los daños alegadamente sufridos por pagar los cargos imputados en los pasados cinco (5) años y que, por tanto, procede la desestimación por estar fuera del término prescriptivo de un (1) año que requiere la ley.

Por último, en cuanto a la causa de acción de abuso de derecho, los apelados argumentaron que para que dicha doctrina prospere, existe un elemento *sine qua non* que requiere demostrar que la parte demandada ha abusado de un derecho o estatuto, sin ampararse en otra ley. Por tal motivo, los apelados expresaron que esta última reclamación es una mera repetición de las primeras cuatro causas de acción y que no cumple con los elementos requeridos para probar abuso de derecho.

En esa misma fecha, Jorge L. Pérez presentó su propia *Moción de Desestimación por falta de parte indispensable y por dejar de exponer hechos que*

*justifiquen la concesión de un remedio*[7]. En ella, adoptó e incorporó por referencia todas las razones planteadas por AEG en su Moción de Desestimación, presentada ese mismo día.

El 10 de diciembre de 2024, Ticketera y el Sr. Morales presentaron una *Moción para unirse a la solicitud de desestimación […] del codemandado Jorge Pérez […]*[8].

Luego de varios trámites procesales, el 16 de abril de 2025[9] el foro de origen emitió una *Sentencia*[10] a favor de los apelados donde declaró **HA LUGAR** la *Moción de Desestimación* […] presentada por los apelados y desestimó la *Demanda* en su totalidad.

Inconforme, los apelantes acudieron ante nos, mediante el *Recurso de Apelación*[11], e hicieron los siguientes señalamientos de error:

> **PRIMERO:** ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DESESTIMAR LAS CAUSAS DE ACCIÓN BAJO LA LEY ANTIMONOPOLÍSTICA, *supra*, INSTADAS EN LA DEMANDA TRAS CONCLUIR QUE LAS ALEGACIONES NO ESTABLECÍAN SATISFACTORIAMENTE VIOLACIÓN AL REFERIDO ESTATUTO QUE FUERA EJERCITABLE BAJO SU ART. 12 (A).

> **SEGUNDO:** ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DESESTIMAR LAS CAUSAS DE ACCIÓN BAJO LA LEY ANTIMONOPOLÍSTICA, *supra*, AL CONCLUIR QUE, A LA LUZ DE CIERTA JURISPRUDENCIA FEDERAL, LAS MISMAS HABÍAN PRESCRITO POR HABER SIDO PRESENTADAS MÁS DE CUATRO (4) AÑOS DESPUÉS DE OTORGADO EL CONTRATO DE EXCLUSIVIDAD ENTRE AEG Y TICKETERA. AL ASÍ PROCEDER, ERRÓ EL FORO PRIMARIO AL NO CONSIDERAR LA APLICABILIDAD DE LA TEORÍA COGNOSCITIVA DEL DAÑO Y LA FIGURA DE LOS DAÑOS CONTINUADOS O CONTINUOS.

---

[7] Véase Entrada #17 de SUMAC.
[8] Véase Entrada #22 de SUMAC.
[9] Notificada el 21 de abril de 2025.
[10] Véase Entrada #41 de SUMAC.
[11] Véase KLAN202500525.

**TERCERO:** ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DESESTIMAR LAS CAUSAS DE ACCIÓN POR DOLO EN LA CONTRATACIÓN, EJERCICIOS ABUSIVO DE LOS DERECHOS Y DAÑOS Y PERJUICIOS, TRAS CONCLUIR QUE LA DEMANDA NO CONTENÍA ALEGACIONES SUFICIENTES PARA ELLO.

Con la comparecencia de las partes y habiendo dado la debida consideración a los *Alegatos* de todas las partes, procedemos a resolver.

-II-

## A. Alegaciones que expongan la solicitud de un remedio:

"Nuestro ordenamiento procesal establece en la Regla 6.1 de Procedimiento Civil que, una alegación que exponga una solicitud de remedio contendrá lo siguiente: "(1) Una relación sucinta y sencilla de los hechos demostrativos de que la parte peticionaria tiene derecho a un remedio; y (2) una solicitud del remedio a que crea tener derecho."[12] Conforme a lo anterior, "no tienen que exponerse detalladamente en la demanda todos los hechos que dan base a la reclamación".[13] Lo esencial es que, "a la luz de las alegaciones de la demanda, los demandados estén razonablemente prevenidos de lo que los demandantes intentan reclamar".[14] Ahora bien, es norma reiterada que, "las alegaciones se interpretarán de manera conjunta y liberalmente a favor de la parte demandante, con el objetivo de hacer justicia."[15] En fin, nuestro más Alto Foro reiteradamente ha "advertido que el propósito de las alegaciones es notificar a la parte

---

[12] Íd.
[13] *León Torres v. Rivera Lebrón*, *supra*, citando el *Informe de Reglas de Procedimiento Civil*, Secretariado de la Conferencia Judicial y Notarial, diciembre 2007, Vol. I, pág. 70.
[14] *Ortiz Díaz v. R & R Motors Sales Corp.,* 131 DPR 829, 835 (1992).
[15] *León Torres v. Rivera Lebrón*, *supra*, pág. 40; *Torres v. Torres*, 179 DPR 481, 501 (2010); *Álamo v. Supermercado Grande, Inc.*, 158 DPR 93 (2002); *León v. Rest. El Tropical*, 154 DPR 249 (2001).

contraria, a grandes rasgos, de las reclamaciones en su contra para, de este modo, brindarle la oportunidad de comparecer al proceso y defenderse, si es que lo desea".[16]

En ese sentido, el documento debe incluir "un mínimo de detalle que informe sobre los alegados actos lesivos que causaron el alegado perjuicio".[17] En esencia, "debe contener un grado suficiente de información sobre las imputaciones de suerte que le permita a la parte demandada entender la sustancia de lo que debe defender. De lo contrario, la parte en la defensiva tendría que adivinar las causas a ser litigadas en su contra".[18]

### B. Moción de Desestimación bajo la Regla 10.2 de Procedimiento Civil:

La Regla 10.2 de Procedimiento Civil[19] y su jurisprudencia interpretativa, por su parte, le confiere al demandado la oportunidad de presentar cualquiera de las siguientes defensas: (1) falta de jurisdicción sobre la materia; (2) falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; (5) **que las alegaciones del demandante dejan de exponer una reclamación que justifique la concesión de un remedio;** y (6) la falta de una parte indispensable.[20]

Al considerar una moción para desestimar una demanda, por ésta dejar de exponer una reclamación que justifique la concesión de un remedio, debe ser evaluada de forma crítica. Ello, puesto que el tribunal está

---

[16] Íd., a la pág. 41.
[17] *León Torres v. Rivera Lebrón*, *supra*, pág. 41, citando a J.A. Echevarría Vargas, *Procedimiento Civil Puertorriqueño*, 1ra ed. rev., [s. l.], [ed. del autor], 2012, pág. 86.
[18] *Íd.*, pág. 80.
[19] 32 LPRA Ap. V, R. 10.2.
[20] Íd, (*Énfasis suplido*).

obligado a tomar como ciertos los hechos bien alegados en la demanda. Hecha esta salvedad, el Tribunal interpretará las aseveraciones de la demanda en la forma más favorable para el demandante formulando a su favor todas las inferencias que puedan asistirle.[21] De igual forma, nuestro más alto foro ha establecido que:

> [A] los fines de disponer de una moción de desestimación, estamos obligados a dar por ciertas y buenas todas las alegaciones fácticas de la demanda radicada. Para prevalecer, el promovente de la moción tiene que demostrar que, aun así, la demanda no expone una reclamación que justifique la concesión de un remedio. Esta doctrina se aplica solamente a los hechos bien alegados y expresados de manera clara y concluyente, que de su faz no den margen a dudas.[22]

En fin, "la demanda no deberá ser desestimada a menos que se desprenda con toda certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de hechos que puedan ser probados en apoyo de su reclamación".[23] Consecuentemente, se debe considerar si a la luz de la situación más favorable al demandante, y resolviendo toda duda a favor de éste, la demanda es suficiente para constituir una reclamación válida.[24]

Es pertinente destacar, además, que nuestro Máximo Foro ha expresado que en los casos que se aleguen violaciones a las leyes antimonopolísticas, el criterio para determinar si se debe desestimar una demanda porque esta deja de exponer una reclamación que justifique la concesión de un remedio es el mismo que en todos los demás casos.[25] Es decir, se utilizará el mismo criterio

---

[21] *Rivera Sanfeliz, et al. v. Jta. Dir. First Bank*, 193 DPR 38, 49 (2015).
[22] *Pressure Vessels PR v. Empire Gas PR*, 137 DPR 497, 505 (1994).
[23] *Pressure Vessels PR. v. Empire Gas P.R.*, *supra*, pág. 505.
[24] *El Día, Inc. v. Mun. de Guaynabo*, 187 DPR 811, 821 (2013); *Consejo Titulares v. Gómez Estremera*, 184 DPR 407, 423 (2012).
[25] *Pressure Vessels P.R. v. Empire Gas P.R.*, *supra*, pág. 506.

que se utilizaría en cualquier otro procedimiento o reclamación.[26]

### C. Ley Antimonopolística de Puerto Rico:

La *Ley Antimonopolística*[27] fue creada con el propósito de evitar concentraciones de poder económico y de que quede a merced de un grupo reducido de personas que actúen movidas por su puro interés privado financiero.[28] Además, la medida se creó para asegurarle "al Pueblo en general, y a los pequeños comerciantes en particular, los beneficios de la libre competencia".[29]

Siguiendo esa línea, nuestra Alta Curia ha expresado que el propósito principal de los estatutos antimonopolísticos recae en el principio fundamental que provee para la preservación de la libertad de competencia, junto con "el entorpecimiento de toda práctica que perjudique el desarrollo de los mercados".[30] Por lo tanto, estos tienen como objetivo el erradicar los actos abusivos, desleales y monopolísticos que limitan la actividad mercantil.[31]

En lo pertinente a la controversia ante nos, el Artículo 2 de la Ley Antimonopolística[32] dispone lo siguiente:

> Todo contrato, combinación en forma de trust o en otra forma, o conspiración para **restringir irrazonablemente los negocios o el comercio** en el Estado Libre Asociado de Puerto Rico o en cualquier sector de éste, por la presente se declaran ilegales y toda persona que haga tales contratos o se comprometa en tales combinaciones o conspiraciones incurrirá en delito menos grave.[33]

---

[26] Íd.
[27] Ley Antimonopolística, *supra*.
[28] Exposición de Motivos de la Ley Antimonopolística, *supra*.
[29] *G. G. & Supp. Corp. v. S. & F. Systs*, Inc., 153 DPR 861, 869 (2001).
[30] *Aguadilla Paint Center v. Esso*, 183 DPR 901, 923-924 (2011).
[31] Íd., a la pág. 924.
[32] Ley Antimonopolística, *supra*.
[33] 10 LPRA sec. 258 (*Énfasis suplido*).

Dicha disposición proviene de la Sección 1 de la *Ley Sherman*, la cual establece:

> Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal.[34]

Tanto el texto del Artículo 2 como la doctrina federal análoga disponen los tres (3) requisitos que se tienen que establecer para demostrar una infracción a esta disposición. Entiéndase, "(1) deberá existir algún contrato, combinación o conspiración entre dos o más entidades separadas (2) el cual **restringe irrazonablemente los negocios o el comercio** (3) en Puerto Rico o en cualquier sector de éste".[35]

En la esfera federal se ha concluido que, el impacto es irrazonable cuando "el efecto **sobre la competencia en el mercado** sea sustancialmente adverso".[36] Ahora bien, en Puerto Rico se ha establecido que el referido impacto en la competencia, bajo la regla de razonabilidad, no se debe confundir con el impacto que una restricción pueda tener sobre un competidor, ya que, lo que se pretende proteger es la competencia, y no a los competidores.[37] Por ende, la determinación de una violación "no puede fundamentarse en el impacto que la restricción tuviese en un solo competidor o negocio sin que exista otra prueba de un efecto a la competencia en general en un mercado particular".[38]

**D. Término Prescriptivo bajo la Ley Antimonopolística:**

---

[34] 15 USC sec. 1.
[35] *Pressure Vessels P.R. v. Empire Gas P.R.*, *supra*, pág. 50 (*Énfasis suplido*).
[36] Íd. (*Énfasis suplido*).
[37] *G. G. & Supp. Corp. v. S. & F. Systs.*, Inc., *supra*, pág. 871.
[38] Íd., pág. 872, citando a *Cargill, Inc. v. Montfort of Colo., Inc.*, 479 U.S. 104, 107 S.Ct. 484 (1986).

La misma Ley Antimonopolística, en su artículo 12, inciso (c) establece que "[l]a acción judicial para recobrar daños de conformidad con las disposiciones de los incisos (a) y (b) de este artículo deberá iniciarse dentro del término de cuatro (4) años a partir del nacimiento de la causa de acción.[39] El texto de la ley es claro al establecer que, el término establecido estatutariamente comienza a correr desde el momento en que nace la causa de acción. Como bien hemos establecido, en casos de contratos, ese momento de nacimiento se refiere al momento en que se perfecciona dicho contrato. En su contraparte federal, la Ley Clayton, en la cual está basada nuestro estatuto, establece que "[a]ny action to enforce any cause of action under section 15, 15a, or 15c of this title shall be forever barred unless commenced within four years after the cause of action accrued."[40]

Por otro lado, nuestro Código Civil establece en su artículo 19 que, "[c]uando la ley es clara y libre de toda ambigüedad, su texto no debe menospreciarse bajo el pretexto de cumplir su espíritu."[41] Es manifiesto, en el texto de ambas leyes, que el término establecido para instar estas causas de acción es de cuatro (4) años y no más. Si la acción no es presentada dentro del término determinado por la misma ley, ya no existe causa de acción. Ambas leyes y la jurisprudencia federal son claras y específicas, sin ninguna ambigüedad.

**E. Daños Continuados:**

---

[39] 10 LPRA sec. 268 (c).
[40] 15 USC sec. 15 (b).
[41] 31 LPRA sec. 5341.

Nuestro Tribunal Supremo ha sostenido que, "en los daños continuados se genera una sola causa de acción que comprende todos los daños ciertos, tanto los actuales como los previsibles en el futuro, como consecuencia de una conducta torticera continua."[42] Así, el daño continuado se deriva de un acto culposo unitario e ininterrumpido; por tanto, al ser conocido, **se puede prever su continuidad**.[43] El Tribunal Supremo ha expresado que, en este escenario, lo que en realidad es continuo es el acto u omisión que produce el daño y no, necesariamente, la lesión sufrida.[44] Es decir, se debe observar la conducta del actor que produce el daño por acción u omisión, no el efecto acumulativo.[45] La esencia de la doctrina de daños continuados "no descansa en la naturaleza […] del perjuicio ocasionado por la perturbación, sino que, en el carácter continuo o progresivo de la causa [acto u omisión torticera] que lo origina, que renueva constantemente la acción dañosa".[46]

La doctrina describe los *daños continuados* como:

> **[a]quellos producidos por uno o más actos culposos o negligentes imputables al actor, coetáneos o no, que resultan en consecuencias lesivas ininterrumpidas**, sostenidas, duraderas sin interrupción, **unidas entre sí**, las cuales al ser conocidas hacen que también se conozca, **por ser previsible**, el carácter continuado e ininterrumpido de sus efectos, convirtiéndose en ese momento en un daño cierto compuesto por elementos de daño actual (aquel que ya ha acaecido), y de daño futuro previsible y por tanto, cierto.[47]

---

[42] *Rivera Ruiz et al. v. Mun. de Ponce et al.*, 196 DPR 410, 417 (2016).
[43] *Cacho González v. Santarrosa*, 203 DPR 215, 222 (2019) (*Énfasis suplido*).
[44] *Rivera Ruiz et al. v. Mun. de Ponce et al., supra.*
[45] *Cacho González v. Santarrosa, supra.*
[46] *Rivera Ruiz et al. v. Mun. de Ponce et al., supra.*
[47] H. Brau del Toro, *Los daños y perjuicios extracontractuales en Puerto Rico*, 2da ed., San Juan, Publicaciones JTS, 1986, V. II, pág. 648 (*Énfasis suplido*).

**-III-**

Los apelantes presentan como **primer error** que, erró el Tribunal de Primera Instancia al desestimar las causas de acción bajo la Ley Antimonopolística, *supra*, instadas en la *Demanda* tras concluir que las alegaciones no establecían satisfactoriamente violación al referido estatuto que fuera ejercitable bajo su Art. 12 (a).

No le asiste la razón.

Como discutimos anteriormente, el propósito de las alegaciones en una Demanda es notificar a la parte contraria las reclamaciones en su contra, para que estos puedan defenderse, si así lo desea.[48] Estas alegaciones deben constar claras y específicas dentro de la misma demanda, ya que iría en contra del propósito de hacer justicia el que un demandado tenga que descifrar qué quiso decir un demandado en cuanto a lo que alega.

En el caso de epígrafe, los apelantes alegan que por los pasados cinco (5) años y en la actualidad, han pagado, y continúan pagando, un precio ilegalmente inflado por los boletos para asistir los eventos de entretenimiento y espectáculos que se celebran en las facilidades o localidades administradas por AEG, por virtud del contrato de exclusividad impugnado. Pero, al analizar detenidamente el texto de la ley, es evidente que el referido artículo 12, inciso (a) habla de que "por razón de actos prohibidos o declarados ilegales por las disposiciones de esta ley".[49] Es difícil descifrar este artículo por sí solo, por lo que es necesario recurrir a la misma Ley para entender a qué actos

---

[48] *León Torres v. Rivera Lebrón, supra*, a la pág. 41.
[49] 10 LPRA sec. 268.

específicos se refiere. En su Artículo 2, se describen los actos que restringen el comercio. Establece que "[t]odo contrato, combinación en forma de trust o en otra forma, o conspiración para **restringir irrazonablemente los negocios o el comercio** […]".[50] Como vemos, es indiscutible que el mencionado artículo se refiere a que, el acto o contrato ilegal es aquel que restringe el comercio en general en Puerto Rico. Sin embargo, el contrato que los apelantes intentan impugnar es uno de exclusividad entre dos entes específicos. Dicho contrato no establece que toda facilidad en Puerto Rico dirigida a llevar a cabo eventos y espectáculos está prohibida de celebrarlos. Sino que solo aquellas facilidades administradas por AEG utilizarán la boletería de Ticketera para la venta de boletos para esos eventos en específicos. Difícil es concluir que este contrato de exclusividad en específico tenga un impacto que restrinja de manera irrazonable el comercio en todo el país.

Por tal razón, los apelantes no establecieron satisfactoriamente una violación al referido estatuto bajo el Artículo 12 (a) de la Ley Antimonopolística[51].

Como **segundo error**, los apelantes señalaron que, erró el Tribunal de Primera Instancia al desestimar las causas de acción instadas bajo la Ley Antimonopolísticas, supra, al concluir que, a la luz de cierta jurisprudencia federal, las mismas habían prescrito por haber sido presentadas más de cuatro (4) años después de otorgado el contrato de exclusividad

---

[50] 10 LPRA sec. 258 (*Énfasis suplido*).
[51] Ley Antimonopolística, *supra*.

entre AEG y Ticketera. Al así proceder, erró el foro primario al no considerar la aplicabilidad de la teoría cognoscitiva del daño y la figura de los daños continuados o continuos.

Tampoco le asiste la razón.

Surge de manera clara de la Ley Antimonopolística, que el término para instar una acción de daños conforme a su artículo 12, inciso (a)[52], es de cuatro (4) años. Específicamente, establece que ese término comienza a correr a partir del nacimiento de la causa de acción.[53]

Como vimos previamente, nuestro Código Civil, como guía de interpretación, establece que, cuando una ley es clara y libre de ambigüedades, su texto no debe menospreciarse bajo el pretexto de cumplir su espíritu.[54] Ósea, evidente es que, en caso de claridad, el texto sostiene su propia fuerza. Eso se puede traducir a que, es innecesario rebuscar algún otro estatuto que complete dicha ley, cuando la que se pretende completar no contiene ningún vacío, sino que, por el contrario, es clara en lo que establece.

En cuanto a la Ley que nos ocupa, no existe vacío que requiera considerar otra doctrina o estatuto, como lo es la teoría cognoscitiva del daño, sino que, sin ambigüedad, establece que el término prescriptivo comienza desde el nacimiento de la causa de acción. En este caso, la causa de acción nació en el momento en que se perfeccionó el contrato de exclusividad. Surge de la propia demanda que, es a causa del referido contrato que surgen los alegados daños de los apelantes. Asimismo,

---

[52] Íd.
[53] Íd.
[54] 31 LPRA sec. 5341.

sostienen que dicho contrato fue perfeccionado "en o alrededor del año 2019". Al presentar su demanda en septiembre del año 2024, el término de cuatro (4) años ya había transcurrido. Mas aún, claramente surge de las propias alegaciones de los apelantes en su Demanda que, la adquisición de los boletos que, según ellos, dieron paso a los alegados daños, ocurrió en los pasados cinco (5) años, indiscutiblemente, cinco (5) años está fuera del término discutido.

Con relación a su alegación de que no se consideró la figura de los daños continuos o continuados, es evidente que dicha doctrina es inaplicable e irrelevante en el caso de autos. Si desmenuzamos los requisitos para que un daño sea considerado como continuado, una y otra vez se destaca el término de ininterrupción en el acto que causa el daño. Es necesario que los alegados actos culposos imputados sean tales que provoquen lesiones ininterrumpidas, sostenidas, duraderas y que el carácter continuado sea previsible en cuanto a sus efectos. Y es que, dificultoso es concluir que el perfeccionamiento de un contrato entre dos partes específicas sea considerado como un acto continuo. Los apelantes vez tras vez han resaltado el contrato de exclusividad como el génesis de sus alegados daños, y el autorizar dicho contrato no puede razonablemente considerarse como un acto con carácter continuo o progresivo que renueve constantemente una acción dañosa. Mucho menos razonable es concluir que, la compra de boletos para distintos eventos o espectáculos son actos continuos. Todo lo contrario. La propia naturaleza de un evento o espectáculo es de carácter singular, ya que un boleto en

particular es para asistir a ese evento en particular y no una experiencia continua.

Por lo tanto, no se cometió el segundo error.

Una vez determinado que los primeros dos errores no se cometieron, resulta innecesario discutir el **tercer error** señalado por los apelantes.

**-IV-**

Por los fundamentos antes expresados se **confirma** la Sentencia apelada.

Lo acordó y manda el Tribunal, y lo certifica la secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones